ROBERTS vs. WOOD and others.

NEGOTIABLE INSTRUMENTS: DELIVERY. (1) *Nondelivery a defense against innocent holder.* (2, 3) *Question of maker's negligence.*

FORECLOSURE OF MORTGAGE. (4) *Rights of purchaser of premises mortgaged, as against subsequent admissions of mortgagor.* (5.) *Practice where a defendant in foreclosure claims title paramount.* (6) *Effect of discharge in bankruptcy of mortgagor.*

1. The notes and mortgages here in suit were part of a large number of such instruments deposited by the makers in the safe of one S., subject to the order and control of the makers alone; and they came into the possession of the payee (a railroad company), and were by it negotiated to plaintiff, in the same manner as the instruments mentioned in *Roberts v. McGrath, supra;* and this court holds that there was never any valid *delivery* of them by the maker.

2. As the instruments were not purloined or taken clandestinely from the safe of S., but were procured from his clerk by the agent of the payee under false pretenses, the fact (if shown) that the safe was habitually and carelessly left open, is not evidence to charge the mortgagor with negligence in permitting them to be put in circulation.

3. There being no circumstances to charge the maker of these instruments with negligence, distinguishing the case from that of *Chipman v. Tucker, ante,* p. 43, the doctrine of that case is followed here.

4. The fact that the mortgagor, in certain bankruptcy proceedings, scheduled the debts mentioned in his said mortgages as valid claims against himself, cannot affect the rights of one to whom he sold and conveyed the mortgaged premises long before such proceedings in bankruptcy.

5. The validity of an alleged title *paramount* to the mortgage interest, though subsequent in time (as by a subsequent tax deed), cannot properly be litigated in the foreclosure suit. And where one is made defendant to such suit under an averment that he "claims some interest which is subsequent *and subject* to the mortgage," the setting up of such paramount title by answer is equivalent to a *disclaimer* of the kind of interest mentioned in the complaint, and the action may be dismissed as to such defendant.

6. A discharge of the mortgagor in bankruptcy will prevent a judgment against him for a deficiency on foreclosure, but will not prevent the judgment of foreclosure.

APPEAL from the Circuit Court for *Wood* County.

This is an action to foreclose four mortgages on real estate, purporting to have been executed by the defendants *Wood and wife* to the Milwaukee & Horicon Railroad Company to secure the payment of a like number of promissory notes of even date therewith, purporting to have been made by said *Wood*, and payable by the terms thereof to said railroad company or order. Four parcels of land are included in these mortgages, one parcel in each of them. No claim is made in the complaint to recover for any deficiency ; such claim, which was originally inserted therein, having been stricken out by way of amendment.

The printed case states that the defendant *Wood* answered a discharge in bankruptcy dated September 14, 1869 ; but his answer is not found in the record returned to this court.

The defendant *Norton* answered setting up title in himself to the mortgaged premises, subsequent to the mortgage but paramount thereto, under a tax deed followed by actual possession for more than three years and the payment of taxes subsequently accruing thereon.

The defendant *Granger* is the owner, by subsequent conveyance from *Wood*, of the equity of redemption in and to all of the lands included in three of the mortgages in suit, but has no interest in the parcel covered by the fourth mortgage. *Granger's* answer attacks the validity of the mortgages, and denies that they were ever delivered by *Wood* to the railroad company. His answer also contains a counterclaim, and demands that the mortgages be surrendered and cancelled.

The mortgages in suit, and the notes which they were given to secure, were executed (excepting delivery) about the same time that the promissory note was made, which is the subject matter of the case of *Roberts v. McGrath, ante,* p. 52, and under very similar circumstances; and were deposited by *Mr. Wood* personally in the safe of Mr. Scott, subject to the order of *Mr. Wood* alone. The securities were obtained from the safe of Mr. Scott, by the agent of the payee, at the same time

and by the same fraudulent pretenses that the note and mort-
gage of McGrath were obtained therefrom, and were in like
manner negotiated by the payee before due and for value, to the
plaintiff, who is a *bona fide* holder thereof.    For a more detail-
ed statement of those transactions, reference is made to the re-
port of that case.

The circuit court found, among other things, that there had
been no delivery of the mortgages by the mortgagors, and that
they were not chargeable with any negligence in the premises,
and gave judgment dismissing the complaint and for the sur-
render and cancellation of all the mortgages, as prayed in the
counterclaim of the defendant *Granger*.    From this judgment
the plaintiff appealed:

*Davis & Flanders*, for appellant, contended, 1. That by the
settled doctrine of this court, the note *and mortgage* in this case
were not subject to any defense which would be precluded by
the law merchant in the case of other negotiable paper. *Fisher
v. Otis*, 3 Chand., 83; *Martineau v. McCollum*, 4 id., 153;
*Croft v. Bunster*, 9 Wis., 503; *Blunt v. Walker*, 11 id., 334;
*Cornell v. Hichens*, id., 353; *Stillwell v. Kellogg*, 14 id., 461;
*Crosby v. Roub*, 16 id., 616; *Andrews v. Hart*, 17 id., 297;
*Howard v. Boorman*, id., 459; *Callanan v. Judd*, 23 id., 343;
*Murphy v. Dunning*, 30 id., 301.    2. That this doctrine is in
accordance with the decisions of courts elsewhere.    *Carpenter
v. Longan*, 16 Wall., 273; *Kennicott v. Supervisors*, id., 469;
*Reeves v. Scully*, Walker's Ch. (Mich.), 248; *Dutton v. Ives*, 5
Mich., 515; *Taylor v. Page*, 6 Allen, 86; *Pierce v. Faunce*, 47
Me., 507; Powell on Mort., 908, note; 1 Hilliard on Mort.,
572; 2 Washb. R. P., 225.    3. That the fact that possession
was obtained by the payee through misrepresentations is no
defense to negotiable paper as against a *bona fide* holder, who
purchased for value after maturity.    (On this point counsel re-
ferred to the authorities cited in their brief in *Roberts v. Mc-
Grath*, *ante*, p. 55.)    4. That even if the mortgages were not
governed by the rule applicable to negotiable paper, still the

rule that where one of two innocent parties must suffer, the one through whose negligence the damage is done must bear the loss, would make the mortgages valid in plaintiff's hands. They were left by *Wood* in a safe known to be insecure, and, if committed to any one's charge, were so committed without sufficient instructions in reference to them. The acts of the mortgagor constitute a valid delivery of the mortgages as to the plaintiff. See *Tisher v. Beckwith*, 30 Wis., 58. The case is much stronger than it would be if the mortgages had been deposited in escrow. "The depositary of an escrow, if he can be considered the agent of the depositor at all (which we very much doubt), is only such within the scope of his authority. *He is as much the agent of the grantee as of the grantor.*" *Everts v. Agnes*, 4 Wis., 352. It is not pretended that in the present case the custodians of the safe were in any sense the grantee's agents. They were agents of the grantor alone. If they abused their trust, who should suffer? If the instruments were obtained from the grantor's agents, his position is no better than it would be if they had been obtained from himself through fraud. But in the latter case the mortgages would clearly have been valid in the plaintiff's hands. *Everts v. Agnes, supra; Somes v. Brewer*, 2 Pick., 184. 5. Counsel argued from the evidence that *Wood* was guilty of laches after the delivery of the mortgages to the railroad company, which should estop the defendants from denying a delivery. 6. The mortgagor has admitted of record, in the bankruptcy proceedings against him, that the mortgage debt was a subsisting liability.

*P. L. Spooner*, for respondents:

1. The notes signed by *Joseph Wood* never had any legal existence as between himself and the railroad company. *Bank of Indiana v. Ross*, 1 Blackf., 315; *Thomas v. Watkins*, 16 Wis., 550; 18 Ind., 73; 16 Barb., 548. 2. Notes that have no vitality as between the parties, often acquire vitality by negotiation to an innocent purchaser; as where they are deposited in

escrow, and are wrongfully put into circulation (*Vallette v. Parker*, 6 Wend., 615); or where notes in blank, or with blank indorsements, are entrusted to an agent to be used for certain purposes, and the agent uses them for different purposes. *Putnam v. Sullivan*, 4 Mass., 45; *Woodhull v. Holmes*, 10 Johns., 231. On the other hand, there is a well known class of cases where a note acquires no additional force by negotiation to an innocent purchaser; as where it was given for a consideration which, by statute, makes it void; or where it was procured by fraud going to its execution (*Walker v. Ebert*, 29 Wis., 194; *Foster v. Mackinnon*, 38 Law Jour., 310; 2 Lans., 477; 5 Ala., 370); or where the paper was made by a special agent who had no authority to bind his principal by a note; or where the person signing the paper was not competent to do so, by reason of infancy, coverture or mental infirmity. In addition to the cases thus classified, is the case where a note *payable to a certain person or order* is signed by the maker, and, without having been delivered and without the maker having had an intention to deliver it, is surreptitiously or feloniously taken by the person named as payee, without any negligence on the part of the maker, and is negotiated to an innocent purchaser; and the case (which we regard as identical in principle) where the maker of such a note, having no safe of his own, places the note, merely for safe keeping, in his neighbor's safe, and the payee obtains possession of it by theft or by fraudulent pretenses. Do these two cases belong to the class where negotiation to an innocent purchaser gives vitality to the note, or to the opposite class? It is not a sufficient argument for putting them into the former class, that an innocent purchaser could not determine by any reasonable diligence whether the note ever had any legal inception, and that a rule which would permit the makers to impeach their vitality, would clog the circulation of commercial paper; for that argument would apply with equal force to paper procured by fraud going to its execution, or made upon a consideration which the statute declares shall

render it void. In support of the view that in the two classes of cases named, negotiation to an innocent purchaser should not give the note vitality, counsel cited *Burson v. Huntington*, 21 Mich., 415, referred to with approbation by this court in 30 Wis., 59 and 235; and he distinguished the cases of *Putnam v. Sullivan, Vallette v. Parker*, and *Woodhull v. Holmes, supra*, where the defendants were held liable on the ground that the paper was placed by them in the hands of a third person to be negotiated or disposed of, and that they, if any one, should suffer in case the confidence reposed by them in their agent was abused. Counsel also distinguished the cases which relate to bank notes, or cash notes payable to bearer and circulating as money, or to bills or notes indorsed in blank so as to be transferable by delivery, put into circulation by fraud, theft or robbery (*Miller v. Race*, 1 Burr., 452; *Grant v. Vaughan*, 3 id., 15, 16; *Peacock v. Rhodes*, 2 Doug., 633; *Lowndes v. Anderson*, 13 East, 130; *Solomon v. Bank of England*, id., 135; *Thurston v. McKown*, 6 Mass., 428; *Wheeler v. Guild*, 20 Pick., 545; Story on Bills, § 188; *Gould v. Segee*, 5 Duer, 260; *Putnam v. Sullivan* and *Woodhull v. Holmes, supra; Worcester Co. B'k v. D. & M. B'k*), 10 Cush., 488; 1 Parsons on N. & B.). As a result of the authorities, counsel contended that the notes in suit are not *Wood's* notes, and he is not liable upon them, unless he was guilty of such negligence as would estop him from denying their validity in the hands of innocent purchasers; and that such estoppel should not be raised from a want of ordinary foresight or caution, but only from extreme or culpable negligence or recklessness. 3. However it may be with the notes, it seems clear that the *mortgages* in suit had no legal existence. *Delivery* is essential to the validity of a deed; "and such delivery must be *voluntary*, that is, made with the assent and in pursuance of an intention on the part of the grantor to deliver it; and, if not so delivered, it conveys no title." *Tisher v. Beckwith*, 30 Wis., 57. This principle applies to a mortgage as well as to any other deed. *Croft v. Bunster*, 9 Wis., 508, 511.

·True, the transfer of a mortgage debt carries the mortgage with it; but there must be a mortgage to be carried, before the rule can apply. The rule that the transfer of a mortgage debt carries the mortgage with it, and the rule that the maker of the alleged mortgage may contest the fact of its delivery, even as against an innocent assignee of the note, are both laid down in *Croft v. Bunster*, and of course are not in conflict with each other. It seems to be settled that if a negotiable note is deposited in escrow and afterwards wrongfully delivered to the payee, the maker is bound as to an innocent holder for value (*Vallette v. Parker, supra*); but it is equally well settled that the fraudulent procurement of a *deed* deposited as an escrow ·will not operate to pass the title to the grantee named therein, and that a subsequent purchaser from him for a valuable consideration without notice derives no title thereby. *Evert v. Agnes*, 4 Wis., 343; *Same v. Same*, 6 id., 453. Counsel further argued that the negotiable character of the note has nothing to do with this question; that the transfer of a bond, or a nonnegotiable note, carries with it the mortgage, where there is one, in the same manner as if the paper were negotiable; that where a mortgage has been given, the only question, upon a bill to foreclose it, is, whether the mortgagor owes the debt; but that the determination that the, person who signed a note owes the amount thereof to the holder (whether upon the ground that the note was negotiable, or upon any other ground), determines nothing as to the validity of an alleged mortgage securing the debt, where that is denied. And upon the evidence counsel contended that there was clearly no delivery of the mortgages (*Prutsman v. Baker*, 30 Wis., 646, 654; *Swift v. Hall*, 23 id., 532; *Case v. Jewett*, 13 id., 498), and no such negligence on the part of *Wood* as *estops* him from denying a delivery. *Evert v. Agnes*, 6 Wis., 454; 30 id., 59, 68.

LYON, J.  I. The cases of *Roberts v. McGrath*, ante, p. 52, and *Chipman v. Tucker*, ante, p. 43, involved the same ques-

tions presented by this appeal concerning the validity of the mortgages sought to be foreclosed in this action; and but little need be added to what was said in those cases on the subject.

Manifestly there was no delivery of the mortgages. This is a stronger case against delivery than that of *Roberts v. Mc-Grath;* for Mr. Powers had nothing to do with their deposit in the safe of Mr. Scott, and delivery cannot possibly be predicated of any act of his.

The evidence fails to prove that the mortgagors were guilty of such negligence in the premises as estops them, or those claiming under them, to deny that the mortgages were delivered. There was some evidence tending to show that the safe in which the securities were deposited was not always, perhaps not usually, kept closed and locked, and that they might easily have been purloined therefrom. But, inasmuch as they were not purloined, or taken from the safe clandestinely, but were obtained from the clerk of Mr. Scott by means of false and fraudulent statements and pretenses, the fact that the safe was habitually and carelessly left open (if such was the fact), is of no importance. Locks and bolts were unavailing against the means employed to obtain the securities. From the time of the deposit of the mortgages until they passed into the possession of the railroad company, the defendant and mortgagor, *Joseph Wood,* who had the control of them, was absent from Grand Rapids attending a session of the legislature, of which he was a member. After his return, he learned that the securities had been taken from the safe, and he seems to have made reasonable efforts to reclaim them. He demanded them of the railroad company, and commenced and prosecuted an action to compel a surrender and to obtain a cancellation of them, but without avail. As respects the alleged negligence of the mortgagors, there is nothing in this case to distinguish it in principle from that of *Chipman v. Tucker, supra;* and what is there said on that subject by Mr. Justice COLE, is applicable here.

We therefore affirm the judgment so far as it affects the defendant *Granger*, who alone denied the validity of the mortgages, and hold that the three mortgages which affect the lands in which he has an interest were properly adjudged to be surrendered and cancelled.

It should be remarked in this connection, that it is quite immaterial, so far as *Granger* is concerned, that, in certain bankruptcy proceedings, the defendant *Joseph Wood* scheduled the indebtedness mentioned in these mortgages as valid claims against himself. This was done long after *Granger* took a conveyance of the mortgaged lands, and cannot affect his rights in the same.

II. The defendant *Norton* claimed under a title which, if valid, was paramount to the mortgage interest, although subsequent thereto in time. It is well settled that the validity of his title cannot properly be litigated in this action. *Strobe v. Downer*, 13 Wis., 10; *Pelton v. Farmin*, 18 id., 222, and cases cited. Indeed no attempt was made to do so on the trial, but the tax deed was received in evidence, under objection, for the sole purpose of showing that the defendant *Norton*, the grantee named therein, was in a position to contest the validity of the mortgages. But in his answer *Norton* does not attack their validity, but rests his defense thereto entirely on his paramount title.

It was said by Mr. Justice PAINE, in *Pelton v. Farmin*, that "if the party alleged to claim some interest subsequent and subject to the mortgage, claims none, he should disclaim, and the suit should be dismissed as to him." There is no such formal disclaimer in the answer of *Norton ;* but the assertion by him of a paramount title is equivalent thereto. For these reasons, and not because the mortgages never had a legal existence, the action was properly dismissed as to him.

III. The record fails to show that the mortgagors contested the validity of the mortgages ; it only shows that the defendant *Joseph Wood* answered his discharge in bankruptcy.

Such discharge does not interfere with the plaintiff's right to have a foreclosure of his mortgages; it only prevents a judgment against *Wood* for any deficiency.

Inasmuch as no defendant who has any interest in the land included in one of the mortgages, has attacked the validity of that mortgage, the plaintiff is entitled to a foreclosure thereof. The judgment must therefore be reversed as to the mortgagors, and the cause will be remanded for further proceedings in accordance with this opinion.

*By the Court.* — It is so ordered.