# WELLS *v.* FRANCIS *et al.*

*(Supreme Court of Colorado, May 2, 1884—Appeal from the District Court of Clear Creek County)*

1. PARTIES. In equity the rule is, that all persons materially interested in the result should be made parties to the suit.

2.* SAME—RELATION OF TO TITLE BOND. The relation of the parties to a title bond is that of mortgagor and mortgagee; the action for a vendor's lien is analogous to the foreclosure of a mortgage; and the rule that a person claiming adversely to the title mortgaged need not be made a party, applies to the former as well as the latter action. A strong analogy also exists between the action for a vendor's lien and a suit for specific performance, but in the latter the above rule as to adverse claimants likewise prevails.

3. CONTRACT. If it does not appear on the face of a contract, or otherwise, that the trustees act as agents, or in a fiduciary capacity, it is unnecessary to go beyond the terms of the contract.

4. ADVERSE CLAIMANTS of title to realty cannot resist the suit of one joint tenant therefor, on the ground that his co-tenants are not asserting their interests in the same action.

5. EVIDENCE. The general rule that a judgment or decree is inadmissible as evidence except in suits between parties, or privies thereto, is not inflexible; it is sometimes admissible between others as an introductory fact to an important link in a chain of title relied upon.

6. DECREE. The purchaser at a sale under the decree rendered in a vendor's lien suit succeeds to the title and rights covered by the decree.

7. VENDOR'S LIEN—ACTION FOR. The action for a vendor's lien may be maintained against one holding actual possession under a title bond of a part of the public domain, with extensive and valuable improvements thereon.

8. PATENT. A patent which is not void on its face for frauds or irregularities in procuring the same, can only be impeached therefor in a direct proceeding to set it aside.

9. TRUSTEE—TITLE TO TRUST ESTATE. Title procured to that which may properly be termed a trust estate, by the trustee, for his own advantage, and against the interest and without the consent of his beneficiary, will be declared in equity to be held in trust for the latter. And one who, with full knowledge of the situation, colludes with the trustee in procuring such adverse title, is in no better position than the trustee himself.

10. AGREEMENT. An agreement signed by but one party thereto, without any present consideration passing, is a naked promise, and at least until part performance, cannot be enforced by or against either party.

11. COURT OF EQUITY—DUTIES OF. It is the duty of a Court of equity to render exact justice between the parties before it in each particular case, so far as such a course is consistent with that certainty in legal rules and security of legal rights which must form the basis of all stable jurisprudence. And a Court of equity will refuse its aid to give the plaintiff

what the law would give him if the Courts of common law had jurisdiction, without imposing upon him conditions relating to the subject matter in controversy, which the Court considers he ought to comply with; although the subject of the condition is one the Court would not otherwise enforce.

HELM, J. The following questions are presented by the record in this case, viz.:

*First*—Were the patentee and his grantees, who are the appellees in this suit, necessary parties to the action of appellant for a vendor's lien? By failing to make them parties thereto, is he now estopped from testing the validity of their claim of title to the premises in controversy?

*Second*—Was it necessary in that action to sue Francis as trustee, or to make his *cestuis que trust* parties, in order to reach the entire equitable interest conveyed and held by him under the title bond?

*Third*—In view of the answers which may be given to the foregoing questions, what are appellant's rights, as disclosed in this action, against the patentee and his grantees?

The suit for a vendor's lien was an equitable action, and the rule is, that in equity all persons materially interested in the result of the litigation should be made parties.

The issue tried in that suit was the plaintiff's right to a vendor's lien upon the equitble interest held by Francis in the premises in controversy; appellant, who was plaintiff there, sought no relief whatever against appellees; he simply undertook to subject the equitable title, which passed from Way to Francis under the title bond, to the payment of purchase money due upon the sale of the premises. The fact that appellant became the purchaser at the sale under his decree, is unimportant; he obtained by such purchase just what any third person would have secured, *i. e..*, the equitable interest conveyed by the title bond and reached in the decree, together with the rights of Francis in connection therewith. This sale and purchase in no way materially affected appellees; it simply resulted in substituting appellant for Francis, and establishing, so far 'as title to the property is concerned, between appellant and appellees the identical relation theretofore existing between the latter and Francis, to the extent, at least, of the interest covered by the decree; it certainly could make no

material difference to appellees whether this relation existed between them and Francis, or between them and appellant. Therefore, under the equity rule above stated, appellees were not necessary parties to that action.

But there is another way of determining this question: The title of appellees is adverse to the interest of both appellant and Francis. It is derived directly from the General Government by patent, and Francis and appellant hold from another source. As we shall presently see, it is claimed that the law created a resulting trust in connection with appellees' patent title in favor of Francis; but this fact, if established, does not change the status of the parties so far as the source of title is concerned and the nature of their holding for the purposes of that suit.

Title bonds are said to be mortgages at common law (*Merritt v. Judd*, 14 Cal., 73), and the relations of the parties are that of mortgagor and mortgagee. *Button* v. *Sawyer*, 5 Wis., 598; *Lewis* v. *Harkins*, 23 Wall., 123; 1 Jones on Mortgages, Sec. 226.

The action of appellant against Francis for a vendor's lien was analogous to the proceedings for foreclosure of a mortgage.

The equitable doctrine may be considered thoroughly established, that the only necessary parties to the latter action are the mortgagor, mortgagee, and persons who have acquired rights or interests through them in the mortgaged premises; sometimes, also, prior incumbrancers may be brought in for the purpose of liquidating their demands. But a person claiming adversely to the title mortgaged has no interest in the mortgage, cannot be affected thereby, and should not be made a party to the foreclosure suit. The rights of such a person cannot, except by consent, be litigated and settled in such proceeding. And a bill which undertakes to accomplish this object is bad on demurrer for misjoinder and multifariousness. *Dial* v. *Reynolds*, 6 Otto, 340; *Croghan* v. *Miner et al.*, 53 Cal., 15; *Banning* v. *Bradford*, 21 Minn., 308, and cases cited; *Chamberlin* v. *Lyell*, 3 Mich., 549; *Roberts* v. *Wood*, 38 Wis., 68.

A strong analogy also exists between the action for a vendor's lien and that for specific performance. Both grow out of the contract of purchase and directly affect the same principal parties; the object of one is to compel performance of a contract; that of the other is to secure the judicial declaration of

a lien upon the property for the purchase money payable under the contract, and both are equitable. So far the question now under consideration is concerned, we discover very little difference in principle between the two.

But in actions for specific performance the same rule obtains in this respect, as in the foreclosure of mortgages. "A mere stranger claiming under an adverse title should not be made a party." 1 Daniel's Ch. Pr., 230, and cases cited; *Lange* v. *Jones*, 5 Leigh, 192.

We are of the opinion that appellant was not obliged to make appellees parties to his action for a vendor's lien. It is very doubtful, had he done so, whether he could have thus determined their rights under the patent.

We observe in passing that that action was commenced four years prior to the adoption of our present Code of Procedure, though, perhaps, this fact in no way affects the question.

The decree in the vendor's lien suit is not entirely free from ambiguity; but giving it the most rational construction, we conclude that the Court intended therein to award a lien upon the entire interest passing from Way under the title bond; the sale and purchase thereunder were evidently had upon the theory that the decree actually accomplished this result. These views accord with the admitted averments of the complaint in this case.

It seems that, while both McFarland and Francis really acted as trustees, the trust was secret and the transactions were had in their individual names and capacities; the title bonds were executed to them as individuals; there does not appear to have been any declaration of the trust or mention of the beneficiaries in writing or of record; the notes for purchase money even were signed individually and not as trustee.

The District Court may have deemed it a proper case for the application of the rule that, "if it does not appear on the face of the contract or otherwise that the trustees acted as agents, or in a fiduciary capacity, it is unnecessary to go beyond the terms of the contract." 2 Perry on Trusts, Sec. 874, and cases cited; *Brown* v. *Cherry*, 56 Barb., 635.

But we are not prepared to admit that appellees ought to be heard upon this objection. Under any view that can be adopted, Francis himself had some interest in the title bond,

and this individual interest passed to appellant under the decree and purchase. Suppose Francis was also acting as trustee for others, and that his *cestuis que trust* have rights that were not reached or affected by the decree; the decree would not entirely fail of effect on this account. Neither Francis nor these beneficiaries are here complaining. Can appellees be heard to deny appellant's right to a judgment in this action against them on this ground? If only the individual interest of Francis was reached by the vendor's lien decree, the relation of appellant to these *cestuis que trust* is analagous to that of joint tenants; and as to their title and rights in the property, those of appellees are adverse. If the Court should order appellees to convey their patent title to appellant, he would hold the same in trust for the beneficiaries of Francis to the extent of their interests. They might assert their rights, if any they have, whenever they deemed it advisable so to do; but we cannot conceive that appellees can be permitted to defeat appellant's action on the ground that these beneficiaries have not hitherto claimed, and are not now demanding in this proceeding a recognition of their interests.

It is doubtful if, under the pleadings, any necessity existed for offering in evidence the decree awarding a vendor's lien; but in any event there was no error in its admission; for, unless rendered unnecessary by the pleadings, it was essential as a prerequisite to the introduction of the sheriff's deed, and therefore constituted the "introductory fact" to an important link in the chain of title upon which appellant relied; this decree, like the deed resting upon it, was admissible for what it was worth; the decree was not intended to conclude defendants in this action; no such result could follow its introduction, for defendants were neither parties nor privies to the suit in which it was rendered. The general rule, that judgments and decrees are inadmissible in evidence, except in suits between parties and privies thereto, is not applicable to the objection, arising as it does in the case before us. It was said by Mr. Justice Story, in a case where this question arose under similar circumstances, that "to reject the proof of the decree would be, in effect, to declare that no title derived under a decree in chancery was of any validity, except in a suit between parties and privies, so that in a suit by or against a stranger it

would be a mere nullity.   It might with as much propriety be argued that plaintiff was not at liberty to prove any other title deeds in this suit, because they were *res inter alia acta.*" *Barr* v. *Gratz's heirs,* 4 Wheaton, 213;  *Gregg* v. *Forsythe,* 24 Howard, 179; 1 Wharton's Evidence, Sec. 821;  *Coursin* v. *Pa. Ins. Co.,* 46 Pa. St., 329;  *Cassler* v. *Shepman,* 35 N. Y., 533; *Prince* v. *Griffin,* 16 Iowa, 555;  *Koogler* v. *Huffman,* 1 McConl., 495.

Appellant, through his purchase of the property at the sale under the decree rendered in the vendor's lien suit, simply succeeded to the rights connected with the interest conveyed by Way in the title bond.

It is urged by counsel for appellees, that by such purchase appellant took nothing; counsel says that Francis never had any interest in the realty, either individually or as trustee, the same being a part of the public domain; and therefore, in the first place, no vendor's lien could properly be decreed; and secondly, no interest in the realty and improvements passed by the decree and purchase thereunder.

To this we must answer, that Francis, by his agents, had possession of the premises, and had expended upwards of $20,-000 in permanent improvements thereon.   He was entitled, upon proper proceeding therefor, to a patent conveying the mill site; by the Territorial statutes any person in the actual occupancy of public lands belonging to the United States, with $100 worth of improvements thereon, might maintain trespass, ejectment, and other actions applicable to injuries upon realty, for wrongful interferances therewith; his interest therein was declared to be transferable, and was subject to sale under execution; as a matter of fact the interest of Francis' grantor, Way, was originally obtained by purchase at sheriff's sale.   The actual possession of Francis appears to have continued to the date of the decree.   We think, under all the circumstances of the case, that Francis had a tangible interest in the realty, as well as the improvements, which was covered by the decree; although before the decree was rendered the fee was claimed adversely to him.

We now proceed to consider the remaining and most difficult question presented in this case.

Assuming the foregoing conclusions to be correct, what is

the attitude of appellant, who has succeeded to the rights of Francis, toward appellees? And what are their respective rights in connection with the property in controversy? Appellees, it will be borne in mind, are Jonas Myers, the patentee, and his grantees.

It is not disputed that all of the appellees, at the time they became interested, were fully aware of the bond to Francis, and of his rights in the mill property. So the further discussion of this subject is not embarrassed by any complication arising from the interest of purchasers for valuable consideration without notice of the rights of Francis.

We do not understand that appellant undertakes in this action to challenge the validity of the patent on the ground of frauds upon the Government. This Court has held that a patent which is not void upon its face for irregularities or frauds in procuring the same, can only be impeached therefor "in a direct proceeding to set it aside." *Poire et al.* v. *Leadville Imp. Co.*, 6 Colo., 406.

Besides, this patent covers one hundred and sixty acres of land, including the mill site and improvements; appellant makes no claim, and could not be heard to complain, as to any other part except the premises in dispute.

If we rightly comprehend his position, he does not question the validity of the patent; his contention is, that appellees held the fee thereunder as trustees of a resulting trust, Francis being the beneficiary; and that as the successor of Francis he is entitled to a decree compelling them to execute the trust.

It appears that appellees, with the exception of Harriett Myers, were employed by Francis at one time or another upon the mill premises; and that when the proceedings were renewed for patent and the entry made, two of them were still in his service, and were acting as his agents in possession, he being a non-resident.

Appellant asserts, as matters of law, that since Blackman and A. W. Myers were the employees and agents of Francis, holding possession and managing the property solely for him as their employer and principal, they could not acquire and retain adverse title thereto; that occupying this fiduciary relation towards him, they would not be permitted to procure absolute title to his estate; that such title thereto, so procured,

enures to his benefit by estoppel; that they and those who conspired and confederated with them to obtain the patent, did so in fraud of his rights, and that all parties to this conspiracy are estopped by the fiduciary relation of Blackman and A. W. Myers from denying his claim to that portion of the patented ground embracing the mill site and improvements connected therewith. And that upon the facts in this case, under the foregoing legal principles, appellant, as successor to the rights of Francis, is entitled to a decree as aforesaid.

There is no doubt concerning the correctness of the propositions, that "no one whose duty to another is inconsistent with his taking absolute title to himself, will be permitted to purchase for himself;" that "no one can hold a benefit acquired by fraud or a breach of his duty;" and that title procured to that which may properly be termed a trust estate, by the trustee or agent for his own advantage, and against the interest and without the consent of his beneficiary, employer or principal, will be declared in equity to be held in trust for the latter. 1 Perry on Trusts, Sec. 206, and cases cited; Ewell's Evans Agency, pp. 358 and 359, and cases cited; Wharton's Commentaries on Agency, Secs. 244 and 241; Pomeroy's Equity Jurisprudence, Sec. 959; *Rings et al.* v. *Burns et al.*, 10 Peters, 280; *Threadgill* v. *Pintard*, 12 Howard, 38; *Bush* v. *Marshall*, 6 Howard, 291.

We are disposed to hold, with appellant, that the rest of appellees are in no better position than are Blackman and Myers; at the time of the renewed patent proceedings they had full knowledge of the equitable rights of Francis; which knowledge was obtained while they were in his employment, upon the premises; with this information thus acquired, though no longer his agents, they conspired with Blackman and Myers, who were; and through this conspiracy obtained whatever interest they hold under the patent. It would be a lame conclusion indeed for us to say, that in a court of equity, under these circumstances, they have any greater rights, or any stronger claims in connection with the disputed premises than have their confederates Blackman and Myers.

We must pause here and consider what effect, if any, the bond or agreement given by Jonas Myers to Francis had upon the rights of the parties.

It is conceded that that instrument was of no binding force; it was conditioned for the conveyance to Francis of title to the quarter section within thirty days after patent, upon payment by the latter of $300 therefor. Aside from the question of fraud claimed to be apparent on the face of the instrument, it is sufficient to say that it was signed by but one party, was without any present consideration, and therefore a mere naked promise. It could not, at least until part performance of its conditions, be enforced by or against either person mentioned therein. It was executed and delivered on the 10th of June, 1873; at that time the patent entry had not been made; no deed to the land had been given by Jonas to any person; there is nothing to show that Francis then had notice of any collusion of his agents, Blackman and Myers, or either of them, with Jonas in the patent proceedings; the agreement makes no allusion to the mill site or improvements, but covers the whole quarter section applied for. In view of the great value of these improvements, it appears reasonable to suppose that the $300 to be paid was a reimbursement simply to Jonas for his expenses in procuring the patent, and compensation for the part of the quarter-section not claimed under the title bond from Way. If this transaction shows anything at all with reference thereto, it is, that Francis claimed, and Jonas recognized and conceded the ownership of the mill site and improvements. It could hardly be possible that Jonas asserted any right to this property, or that Francis admitted that Jonas had any interest whatever therein.

The failure of Francis to comply with the bond and pay the $300, as specified therein, is mentioned by Myers in testimony, and commented upon in argument. But, in our judgment, this is a matter of no significance; for, in the first place, he was not under obligation to do so; and, secondly, Jonas had rendered it impossible to comply on his part, by previously deeding away most of the property.

We do not think this transaction bears materially upon the interests and rights of the parties to this suit.

In view of all the facts and circumstances disclosed by this record, and the law bearing upon the various questions presented, our conclusion is, that appellees hold title to the premises in dispute in trust for appellant.

But it appears from the answer of Jonas Myers, and also from the evidence, that when the entry was made Francis was indebted to Jonas and the other appellees; that such indebtedness aggregated a large sum, and was for labor and services in running and operating the mill, and for materials furnished in making improvements upon the mill property; it likewise, in the same manner, appears that the collusion in obtaining the patent was mainly for the purpose of securing the payment of these demands; also, that the sums contributed toward patent expenses and the interests deeded by Jonas to the other appellees are in proportion to the amounts of their respective claims against Francis.

This was not the way for appellees to obtain security for the payment of their demands; their conduct, notwithstanding this indebtedness, is considered in equity a betrayal of the trust reposed in them; it is not in keeping with the scrupulous regard for the employer's interests exacted under the fiduciary relation existing. We do not think this grievance of appellees prevents the application to this case of the equitable doctrines already announced. But since it palliates their offense greatly, by furnishing an honest motive, and removing the factor of intentional fraud, we are not disposed to ignore it.

It is the duty as well as the province of a Court of equity to render exact justice between the parties before it in each particular case, so far as such a course is consistent with that "certainty in legal rules and security of legal rights" which must form the basis of all enlightened and stable jurisprudence.

The well known maxim, that he who seeks equity must do equity, may properly be invoked in deciding this question. It is said that "the Court of equity refuses its aid to give the plaintiff what the law would give him if the Courts of common law had jurisdiction to enforce it, without imposing upon him conditions which the Court considers he ought to comply with, although the subject of the condition should be one which the Court would not otherwise enforce." Pomeroy's Eq. Jurisp., Sec. 385.

The conditions above mentioned, imposed upon the plaintiff, must relate to "something connected with the subject-matter of the very suit in controversy." *Ib.*, Sec. 387.

The demands of appellees against Francis were for labor done

and materials furnished upon the premises in dispute; their principal object in procuring the patent was to obtain security for the payment of these debts, which grew out of and are connected with the subject-matter of the relief sought by plaintiff. Were Francis himself here seeking a conveyance of the trust estate, we have no doubt but that a Court of equity would say to him: "You are entitled to this relief, because of the rule and the important principle underlying the same, which prohibits a trustee in possession from procuring title to the trust estate for his own benefit; but in this particular case the moving cause for this act of your agents was, the desire of obtaining security for debts connected with the property, which you justly owe them; and while equity would not, in the first instance, assume jurisdiction to coerce payment of these debts, it will say that you must do equity by paying them, as a condition of granting you the relief prayed."

The equitable rule has been announced more broadly than this, though the correctness of the *extension* is questioned. It is held that where a trustee purchased land in his own name, but in reality for the benefit of his *cestui que trust*, and paid the purchase money with his own funds, the beneficiary must, as a condition in the decree for conveyance, first repay the trustee the amount of other advances to or for him, *not connected in any way with the property so purchased.* Pomeroy's Eq. Jurisp., Sec. 392, and cases; Story's Eq. Jurisp., Sec. 64*e*, and cases.

But appellant is not in the exact position Francis would occupy, were the latter plaintiff in this suit.

It is conceded that for upwards of six years appellees were aware of the pendency of appellant's action for a vendor's lien, though they were not parties thereto; during this period, therefore, they had knowledge of his claim for purchase money against the premises. With this knowledge the only means they adopted to obtain security for their debts was to procure the patent. Appellant's diligence in proceeding in the proper manner to subject the property to the payment of his claim, at least gave him a right in the nature of a prior equity.

In view of these and other matters disclosed by the record, we are of opinion that appellant is entitled to more consideration than Francis would be, were he before us in the same attitude. And if appellant is willing to accept the amount of

the original purchase money found due him in the suit for a vendor's lien, with interest, in lieu of the conveyance, upon the conditions aforesaid, we are disposed to give him the privilege.

Counsel for appellees has entirely ignored in argument the rights claimed under the tax deeds; the length of this opinion justifies us in declining to enter into a discussion of the subject; we will, therefore, dismiss it with the statement that, in our judgment, no rights were thereby acquired which interfere with the foregoing conclusions.

The decree will be reversed, but we deem it unnecessary to re-try the entire case. Appellant may cause to be taken proofs to establish the amount of the just demands of appellees against Francis and McFarland for labor, etc., upon the premises, also the amounts disbursed by them for taxes, and a fair proportion of the patent expenses; and upon payment of the aggregate thereof, with legal interest thereon, within forty days after such determination, he shall be entitled to a deed to the premises in controversy as described in the decree for a vendor's lien. Provided, that if, within forty days from the date of remanding this cause, appellant shall, in lieu of compliance with the foregoing directions, elect to accept from appellees the sum of $2,950 found due him in said decree, together with legal interest thereon from the date of such decree, and also the costs adjudged to be due him in that suit, then and in that event, if appellees, within forty days after notice of such election, shall pay the same, they may retain title to the property as it now appears of record; failing to make such payment within the time aforesaid, after notice of appellant's election, appellees shall be deemed to have waived their right to retain title, and shall, upon reimbursement to them of a proper proportion of the patent and tax expenses, determined as aforesaid, and legal interest thereon, convey the same to appellant. The costs of this appeal will be equally divided between the parties.

The cause will be remanded, with directions to the District Court to proceed to judgment in accordance with the views and suggestions herein expressed.     *Reversed.*

*Wells, Smith & Macon,* for appellant.

*L. C. Rockwell,* for appellee.