[No. 7100]

### GORDON TIGER MINING & REDUCTION COMPANY v. BROWN ET AL.

1. TRIAL—*Facts Admitted by the Pleadings,* need not be proved.

2. CONTRACT—*Induced by Fraud—Remedies*—One who is induced to enter into a contract by fraudulent practice of the other party, must, if he would rescind the contract upon this ground, act promptly. Delay is a waiver of the right to rescind. His only remedy thereafter is an action for damages. He is not entitled to recover expenditures made under the contract, because this would be, in effect, a rescission. In such case, even where the contract is for the purchase of realty, the vendee will not be allowed to recover moneys expended in discharging liens upon the property.

3. ——*Rescission—Must be Entire*—The party entitled to rescind a contract, must rescind it wholly. He may not treat it as void for one purpose, and valid for another.

4. VENDOR AND VENDEE—*Vendee Defaulting—Partial Failure of Title.* The vendee not having complied with the terms of the contract, so as to entitle him to a conveyance, will not be allowed damages for a partial failure of the title.

Nor will he be heard to complain that the conservator appearing for a lunatic owning an interest in the property, was not entitled to represent the lunatic.

5. ——*Assignee of Vendor—Action for Possession—Parties*—The vendee having defaulted in the payment of the agreed purchase money, and in the performance of other covenants, plaintiff, who was vendor's assignee of the contract of sale, sued for possession. There was a second contract not making material changes in the first, which had not been assigned. The original vendor was not made a party. The plaintiff held title in fee to 47-48ths of the property. *Held* the omission of plaintiff to secure an assignment of the second contract was of no moment.

6. EQUITY—*Forfeiture*—Where by a contract for the sale of real property the purchaser's right to a conveyance is made to depend upon his performance of conditions precedent, and provision is made that failure to comply with such condition shall operate as a forfeiture of his right, and that possession of the property, as well as the title papers, shall be restored, equity will enforce these conditions where this is necessary to accomplish full relief to the vendor, e. g. where the vendee is in possession and, the contract being a mere option he cannot be required to pay the purchase money.

7. ——*Escrow Agreement Enforced*—The provision of an agreement under which the title deeds to lands are deposited in escrow, that in case of default on the part of the purchaser, the deed shall be surrendered, enforced.

*Error to Denver District Court.*—Hon. HARRY C. RIDDLE, Judge.

Messrs. TALBOT, DENISON & WADLEY and Messrs. HAYT, DAWSON & WRIGHT, for plaintiff in error.

Mr. THOMAS B. STUART and Mr. CHARLES A. MURRAY, for defendants in error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

A suit was instituted by Mrs. Brown against the Gordon-Tiger Mining and Reduction Company, the object of which was to obtain possession of certain mining property described in a contract relating to the sale and conveyance of the property involved, for the return of deeds conveying the property which had been deposited in escrow, and the forfeiture of all money paid, and better-

ments placed upon the property by the company. To the complaint the defendant company answered, and by way of cross-complaint sought to have the contract rescinded, and to be reimbursed for all money paid and expended thereunder. The trial of the case resulted in a judgment in favor of the defendant company, canceling the contract, and decreeing that it was entitled to recover from the plaintiff all money expended by it under the contract, amounting in the aggregate to something like $142,000.00. The plaintiff brought the case here for review on error. The judgment was reversed and the cause remanded (*Brown v. Gordon-Tiger Mining Co. et al.*, 44 Colo. 311, 97 Pac. 1042). The facts presented for the consideration of this court at the time the case was here before are substantially as follows:

At the time the contract was entered into Mrs. Brown owned an undivided three-quarters in the property, and the other quarter belonged to the heirs of Belinda H. Brown, deceased, first wife of S. P. Brown, Mrs. Constance H. Brown being his second wife. The interest of Belinda H. Brown descended, one-half to her husband, and the other half to her six heirs. One of the children, James W. Brown, was a lunatic, his interest being an undivided 1/48th in the property. S. P. Brown, acting for himself and all the other owners, entered into a contract with a Mr. Murphy wherein he agreed to transfer to Murphy, or any corporation organized by him, the property involved, free and clear of all incumbrances, and convey an absolute title in fee thereto upon the following terms: Murphy, or his successor, was to pay off certain liens against the property approximating $60,-000.00, the remainder of that sum, if any, after the liens were discharged to be paid over to Brown; Brown was to furnish an abstract showing good title to the property conveyed subject only to these incumbrances. The contract provided that Murphy, or the corporation he might

designate, should erect a mill on the premises, for the treatment of ores extracted; that this plant should be constructed within six months after the date of the contract, and that it should have a specified capacity; that the property should be operated in a proper and workmanlike manner, without any unnecessary delay—and that from the ores mined, milled and disposed of a certain percentage of the profits were to be paid to Brown until the sum thus paid in connection with the $60,000.00 equalled $200,000.00. When this was paid conveyances were to be delivered. The contract also provided that in case Murphy, or the corporation, after working the mines, should determine that they could not be worked profitably, possession should be surrendered to Brown, and the deeds to be placed in escrow returned and the agreement canceled—"but all moneys paid and all machinery, betterments and improvements added to said property by said party of the second part (Murphy or the corporation) shall be forfeited to said first party as fixed and liquidated damages." A few days after this contract was executed Brown assigned it to the plaintiff, and another contract was drawn up and signed by the same parties, making some slight changes, not material, however, to any question involved. After signing this second agreement Brown, and Mr. Denison, representing Murphy, went to Leadville to complete the examination of the title, and to pay off some of the pressing liens against the property. Upon examination of the records Murphy's representative was not satisfied with the powers of attorney which Brown held from the other owners, and demanded that Brown furnish deeds from all his children. Brown thereupon furnished deeds signed by himself, Mrs. Brown, and the heirs of Belinda H. Brown, deceased, except James W. Brown, conveying the property to Mr. Murphy. Mr. Murphy's representative insisted upon a deed also from James W. Brown. Mr.

S. P. Brown then stated that James W. Brown had died two years before, intestate, leaving no debts, had never been married, and that he, S. P. Brown, his father, was his only heir. He also made an affidavit to the same effect. This statement and affidavit were false. James W. Brown was not dead, but at the time was insane and confined in an asylum in Pueblo, as S. P. Brown well knew. Relying upon this statement and affidavit, Murphy's representative passed the title to the property, and paid upwards of $33,000.00 for a pressing lien represented by a sheriff's certificate of sale which had been issued on a sale of the property under execution, by buying the certificate of purchase and taking a commissioner's deed direct to Murphy. Afterwards Murphy discharged other liens and taxes against the property which, with the one referred to, aggregated upwards of $49,000.00. The Gordon-Tiger Mining and Reduction Company was organized, as provided in the contract, and a deed from Murphy, who had obtained the commissioner's deed under the sheriff's certificate of sale mentioned, to Constance H. Brown, together with a deed from her to the company, were put in an envelope endorsed as follows: "To the Denver National Bank:—The within deeds are to be delivered to The Gordon-Tiger Mining and Reduction Company, or to its order, upon showing to said bank by receipts of S. P. Brown or Constance H. Brown, by herself or by S. P. Brown her attorney in fact, or other evidence satisfactory to said bank, the payment of sums aggregating two hundred thousand dollars: this deposit is made in pursuance of a contract signed by S. P. Brown and Daniel E. Murphy, dated April 9th 1900: said company is the corporation to be organized referred to in said agreement. If said company shall fail to pay said sums, or shall be in default over ninety days in the profits of the mine mentioned in said contract, or shall surrender said contract, as therein provided, or shall fail for any

time for ninety days to fulfil said contract by the continuous operation of said mines and mills or other reduction works, according to the tenor of said contract, then the within deeds are to be delivered to Constance H. Brown or her order. John H. Denison is hereby substituted for said bank.

Constance H. Brown,
By S. P. Brown, Attorney in Fact.
The Gordon-Tiger Mining & Reduction Company,
Daniel E. Murphy, President.''

April 9th, 1900, this escrow agreement was deposited with Mr. Denison, and the possession of the property turned over and delivered to the Gordon-Tiger Mining and Reduction Company under the contract. From that date the company held the absolute and undisturbed possession thereof as its property. During this time it had not furnished or placed on the property any stamp mill or other machinery for the treatment of ores therein, had not mined or removed or sold any of the ore, and had not operated any machinery for the treatment of the ore. The work done by the company in and about the mine consisted in extending tunnels thereon and uncovering and exposing ore bodies and the erection of a boarding house on the premises. March 11th, 1901, the company learned that James W. Brown was not dead, but confined as a lunatic in an asylum in Pueblo. It did not elect to rescind the contract, but on the other hand elected to treat the contract as valid and continuing until the expiration of twenty-one months after it was fully advised that the statement and affidavit of S. P. Brown respecting the death of James W. Brown was untrue. July 24th, 1902, Mrs. Brown instituted this action, based upon the ground that the company had failed to comply

with and carry out the terms and conditions of the contract mentioned, and its willful neglect and refusal to perform the obligations imposed thereby, and prayed that because of its default in these respects the defendant be compelled to return the possession of the property to her, and that all sums paid by the defendant company and betterments made under the contract be forfeited as fixed and liquidated damages, and that she be decreed to be entitled to the deeds and conveyances in the hands of Mr. Denison. She predicated her right to this relief upon the clause in the contract which gave the defendant company the option to surrender and forfeit all improvements and moneys paid, if it should determine that the mines could not be worked profitably, and also upon the language of the escrow agreement. To this action Mr. Denison was made a party defendant. The grounds upon which the company relied in support of its cross-complaint were to the effect that the plaintiff had failed to keep and perform the conditions of the contract, in that she had failed to convey the title to the property as agreed to be conveyed, and had been guilty of fraud with respect to statements regarding the death of James W. Brown. Respecting these matters and the testimony received in support of them as excuses for failure of the company to comply with its contract this court said that they were manifestly frivolous and insufficient, and with respect to the title stated:

"The defect in the title, however it may affect the rights of the respective parties in other respects, certainly affords no excuse for, and was not the cause of, the delay in the erection of the mill within the time provided."

Speaking further to this point, it was said:

"It may be conceded that the defendant had the right

to rescind the contract upon the discovery of the falsity of the statements of S. P. Brown in regard to the death of James W. Brown, and his consequent inability to convey the title to an undivided one-forty-eighth of the property by his own deed as he had purported to do; but having failed to avail itself of that right in apt time, and by recognizing the contract as in force thereafter waived the right to rescind, and became as conclusively bound by the contract as if the fraud had not intervened.''

In other words, we held in disposing of the case that one who proposes to rescind a contract by reason of a fraud practiced on him inducing him to enter into it must act promptly upon the discovery of the facts. If he continue acting under the contract and recognizing it as in force he will be bound by the contract as if the fraud had not occurred. He is not permitted to play fast and loose. ''Delay and vacillation are fatal to the right which has before subsisted.'' In finally disposing of the case we said:

''The defendant having waived the right to rescind the contract upon the ground of Brown's fraudulent representation is conclusively bound by the contract and cannot now urge the defect in the title as an excuse or justification for its failure to perform the obligations imposed upon it by its express terms; in other words, it cannot retain the possession of the property and successfully evade its obligations thereunder. In the event that it shall carry out the contract on its part and the defect in the title is not 'made good' as provided in the contract any damages it may suffer by reason of such defect can be availed of as a defense *pro tanto* to the recovery of the purchase price. * * * The judgment of the district court is reversed and the cause remanded for a new trial.''

When the cause reached the district court the defendant company was permitted to file an amended answer and cross-complaint in which it set up practically the same defenses that were set forth before, but instead of asking for a rescission of the contract stated the damages alleged to have been suffered by reason of the fraud and breach of contract of S. P. Brown, and prayed for judgment for these damages and that it be subrogated to the rights of the lien claimants whose liens against the property it had discharged, which it·alleged it was induced to do by the false representations of S. P. Brown with respect to the title. Previous to this time and in fact before the former trial a conservator had been appointed by the county court for the estate of James W. Brown. The conservator had secured an order from the county court permitting him to intervene in the cause. He had filed his petition to intervene, and in open court offered to perform any decree that the court might render regarding the interest of his ward. Plaintiff then rested and the defendants made a motion to dismiss the bill for lack of equity and evidence. The court then announced that the company would be given an opportunity to elect whether it would accept the so-called tender of title of the intervener's interest and perform the contract. A colloquy then occurred between counsel and the court for the purpose of ascertaining what was meant or intended by such election; the court ruling that by permitting the company to perform the contract it was meant that it should be permitted to pay the balance of the purchase price, $140,000.00, in cash within a reasonable time, but that it would not be allowed to go ahead and carry out the contract by erecting a mill, working the property and paying the balance of the purchase price out of the proceeds. For the purpose of enabling the defendant company to determine whether or not it would elect, as

suggested by the court, a continuance of the cause was had for thirty days. At the expiration of that time the trial was resumed and the company announced that it was unable to accept the offer of election as made by the court. Some further evidence was then introduced on the part of the plaintiff which is not material to any question involved, when the plaintiff again rested. The defendants then moved to dismiss the bill substantially on the grounds previously noted. This motion was denied. The defendants then offered to prove the damages sustained as claimed by their amended answer and cross-complaint which, in effect, were the amount paid to discharge the liens to which reference has been made and the money expended in working the property. This offer was denied, and a decree rendered quieting the title to the property involved in plaintiff, and intervener, and adjudging that all sums of money paid by the defendant company were forfeited to the plaintiff and intervener as fixed and liquidated damages. In brief the decree gave the plaintiff and intervener the property and denied the defendant company any relief whatever. To review this judgment the company had brought the case here on error.

The first point urged is that the court erred in rendering the decree without sufficient evidence to entitle the plaintiff and intervener to the relief granted. The pleadings established the execution of the contract and the failure of the defendant company to perform its conditions, consequently it was not necessary to introduce evidence to establish facts which the pleadings of the parties admitted. The only questions of fact presented by the pleadings were the affirmative defenses set up by the defendant company as an excuse for its failure to comply with the contract. By the amendments filed they were substantially the same as when the case was here

before, namely the fraud of S. P. Brown regarding which we said, as previously noted, that:

"The defect in the title, however it may affect the rights of the respective parties in other respects, certainly affords no excuse for, and was not the cause of, the delay in the erection of the mill within the time provided."

Logically, the next question presented for consideration, though not in the order argued in the briefs, is whether under the averments of the amended answer and cross-complaint to the effect that the company would not have discharged the liens on the property it did but for the false statements of Brown regarding the death of his son, James; and changing the prayer of its cross-complaint from one for rescission to damages, and that it be subrogated to the rights of those whose liens it discharged, and for a judgment for the money expended in working the property, it was entitled to such relief. Counsel for the plaintiff insist that the company is not entitled to such relief, either in whole or in part, for the reason that the former opinion of this court denies it; while on the part of the company it is urged that this question was left open. It is unnecessary to determine this proposition. When the company discovered the fraud perpetrated by Brown, it may be conceded, without deciding it, that the company had the right to rescind the contract and recover the expenditures made thereunder, provided, as was said when the case was here before, it acted promptly. But its failure to so act waived the right to rescind. Assuming, then, that it had the right to rescind had it elected to do so in apt time, its other remedy was to resort to an action for damages. In other words, when a party has been induced to enter into a contract by fraud of the other party thereto he has two remedies: (1) To rescind and be reimbursed for the money expended

thereunder, or, (2) he may waive the right to rescind and have an action for damages resulting from the fraud. When, however, he elects to waive the fraud such election is irrevocable and his remedy thereafter is an action for damages. As previously stated, the company waived its right to rescind, consequently, by way of cross-complaint was only entitled to the damages resulting from the fraud. Such damages cannot include expenditures made under the contract, for the very obvious reason that to permit it to be reimbursed on this account would be nothing less than allowing it to recover what it would be entitled to in case it could maintain an action to rescind.

It is strenuously insisted, however, that it should be entitled to recover the amount expended in discharging liens upon the property, for the reason that it expended money for this purpose before it was aware of the falsity of the statements and affidavit of S. P. Brown, and would not have made such expenditures had it been aware, or had it known, that they were false. This contention is without merit. When it waived its right to rescind by continuing in possession of the property and expending money thereon, after knowledge of the fraud, it waived its right to have the contract declared void. The contract was still executory, and in such circumstances a waiver after knowledge of the fraud constitutes full affirmation and ratification of the contract notwithstanding the fraud. *Richardson v. Lowe,* 149 Fed. 625, 79 C. C. A. 317. The contention under consideration amounts to this, that notwithstanding the company has waived its right to rescind the contract it is nevertheless entitled to recover the amount expended in discharging liens against the property. It is a settled rule of law that where a party has an election to rescind a contract he must rescind it wholly or not at all. He cannot consider it void for one purpose and in force for another.—*Auld v. Travis,* 5 Colo.

App. 535, 39 Pac. 357. We must therefore conclude that the only relief to which the company would be entitled would be damages resulting from a breach of the contract with respect to the title. It is not, however, in a position to invoke this relief, for it does not ask it, neither has it complied with the contract upon its part so as to entitle it to a conveyance of the property.

Counsel for the company urge upon our attention two propositions, which it is claimed precludes the plaintiff from maintaining her action: (1) That a court of equity never enforces a forfeiture, and, (2) that plaintiff does not come into court with clean hands. While it is true that the relief granted plaintiff may in a sense be said to be a forfeiture of the rights of the company in the subject matter of the controversy, it is nothing more than an enforcement of the provisions of the contract between the parties. The contract provides that from the operation of the property a certain percentage of the profits realized were to be paid until the sum thus paid, in connection with the amount disbursed to discharge liens, equalled $200,000.00. It also provided that if Murphy or the corporation, after working the property, should determine that it could not be operated at a profit, the possession of the property should be surrendered, in which event the contract should be void, and neither Murphy, nor his assignes, should be liable for damages, but all improvements, betterments and moneys paid should be forfeited as fixed and liquidated damages. The escrow agreement provided for a return of the deeds in the event that Murphy or the company failed to comply with the contract. Admittedly the company has not complied with the contract and has not excused itself for this failure. The payment of the purchase price after discharging the liens was entirely optional with the company. This amount was to be paid from operating the

property. The company admits that the mines contain valuable ore, but denies that with the use of proper machinery, improvements and appliances they could be mined at a profit. In brief, its attitude is that, although it has not complied with its contract, and will not do so, the plaintiff is not entitled to the equitable relief granted by the decree. She cannot compel the payment of the remainder of the purchase price for the reason that the payment of this sum was optional with the company. It is in possession of the property and no action for damages which she might institute would grant her full relief. It is peculiarly the province of a court of equity to afford a remedy where an action at law would be neither full, adequate nor complete. This court has so frequently declared this to be the rule by which to determine when equity jurisdiction can be invoked that citation of particular cases announcing it is not necessary. It is clear, however, that the facts of this case do not bring it within the rule contended for by counsel for the company relating to the enforcement of forfeitures. By the contract and escrow agreement it is substantially provided that if the company fails to comply with its agreement its rights in the property involved were to cease and determine, the deeds placed in escrow returned, and the betterments and improvements added to the property and moneys paid by the company should be forfeited as fixed and liquidated damages. The conditions under which the company would become entitled to a conveyance of the property depended upon its compliance with its contract. When by a contract for the sale of real property the vesting of title is made to depend upon conditions precedent, with the provision that a failure to comply with such conditions shall operate as a forfeiture of the rights of the vendee, then his failure to perform such conditions operates as a forfeiture of his rights. 1st Pomeroy's

Equity Jurisprudence, section 455. In determining the question under consideration the distinction between conditions precedent and subsequent in contracts for the sale of real estate must be borne in mind.

It is true that a party seeking relief in a court of equity must come into court with clean hands, but this proposition is not applicable to the facts of this case. It is evident, as we have stated, that the defect in the title was not the cause of the failure of the company to comply with its contract. The failure of the company to act promptly upon the discovery of the fraud, with respect to the title, its silence on the subject, and continuing to remain in the possession of the property, and operate and expend money thereon, amounted to an affirmation of the contract notwithstanding the fraud. *Richardson v. Lowe, supra,* and authorities there cited. Certainly a party cannot affirm a contract which he has a right to rescind upon the ground of fraud and then be heard to say that the fraud relieves him from the obligations imposed upon him by the terms of the contract.

It is also urged that Mrs. Brown was not entitled to the relief granted because others who were owners in the property were not made parties. This contention appears to be based upon the ground that the second contract was not assigned to her. As we understand the record, Mrs. Brown was vested with the title to 47/48ths of the property, consequently whether the second contract was assigned to her is of no moment.

The contention is made that the intervener was without authority to dispose of the interest of his ward. This is an immaterial question in view of the fact that the company did not perform its contract and is therefore not in a position to demand title.

The final objection urged against the decree is that the court refused to allow the company to prove that its damages were more than 1/48th of the purchase price. Had the company been in a position to demand a conveyance this question might have been material, but as it was not it is unnecessary to pass upon it.

The judgment of the district court is affirmed.

*Judgment affirmed.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE HILL concur.

Decided January 12th, A. D. 1914. Rehearing denied February 2nd, A. D. 1914.