WALKER ET AL. v. MACMILLAN.

[No. 8421.]

1. CONTRACTS—*Rescission.* A contract cannot be rescinded in part. Plaintiff, in the purchase of real estate, transferred to defendant an article of personal property. Having accepted a conveyance of the realty, and delivered the personalty, he afterwards brought replevin for the goods, claiming that he had been induced to enter into the agreement by defendant's false representations as to the value of the lands. *Held,* an attempt to rescind in part. Judgment for plaintiff reversed. (139.)

2. PRINCIPAL AND AGENT—*Evidence of Agency.* While defendant was attempting to negotiate a sale to plaintiff of a site for a dwelling, plaintiff mentioned that he had an auto car, and that if plaintiff would sell it, he would pay a commission. Defendant, not accepting this employment, proposed a purchase by plaintiff of particular real estate, putting in the car as part payment, which arrangement was finally consummated, defendant acquiring the car as part of the transaction. No commission was paid defendant by either of the other parties. *Held,* that defendant was not the agent of plaintiff to sell the car. (140, 141.)

3. TRIAL—*Questions for the Jury.* Replevin, the complaint charging the procurement of the chattel by fraudulent representations. The testimony as to the alleged representation being in conflict, *held,* that the question was for the jury. (143.)

*On Rehearing.*

*Error to Denver District Court.* Hon. JOHN H. DENISON, Judge.

Messrs. BARNETT & CAMPBELL, and Mr. ARCHIBALD A. LEE, for plaintiffs in error.

Mr. GREELEY W. WHITFORD, and Mr. HUBERT L. SHATTUCK, for defendant in error.

Mr. JUSTICE SCOTT delivered the opinion of the court.

This is an action in replevin for the recovery of possession of an automobile. Verdict and judgment was rendered in favor of the plaintiff, defendant in error, fixing twelve hundred dollars as the value of the prop-

erty, and for six hundred dollars as damages for the wrongful taking and detention.

The action grows out of a real estate transaction involving the purchase by the plaintiff of four and one-half residence lots in the city of Denver. The following, contained in a memoranda of agreement, signed by the defendant Walker, and introduced in evidence by the plaintiff, explains the nature and character of the transaction:

"Denver, Colo., Sept. 24, 1913. Received of C. A. MacMillan and H. H. Quine, the sum of one hundred ($100) dollars, in consideration whereof it is agreed, subject to the written acceptance and ratification by the owner of the following described real estate, to-wit: Lots 25, 26, 27, 28 and S. ½ of 29 Blk. 4, Chamberlain & Winne's Add. being the 4½ lot corner of Nineteenth and Forrest Parkway, facing east and south, situate in the City and County of Denver, Colorado, that the said owner shall and will sell and convey said real estate to said C. A. MacMillan and H. H. Quine for the sum of forty-five hundred ($4500) dollars, payable as follows: One hundred ($100) dollars receipted hereby, four hundred ($400) dollars on acceptance of this proposition on or before September 26th, 1913. Together with a 1913 Model six cylinder Premier automobile, fully equipped now located at garage at 439 Broadway. Value ($2000) to apply on the purchase price of the above described real estate as ($2000) cash. For the remaining two thousand ($2000) purchase price, C. A. MacMillan and H. H. Quine agree to execute their three notes, viz: One for five hundred, due on or before one year, and one for five hundred on or before two years, and one for $1,000 due on or before three years, at 6 per cent interest, payable semi-annually, and secured by first deed of trust on above described property, and provided said purchaser shall make payments as above, on or before the respective dates fixed therefor (time being of essence hereof) said

owner shall, upon the making of said final payment, deliver to said purchaser a good and sufficient warranty deed not later than October 1st, 1913, conveying said real estate free and clear of all liens, encumbrances, taxes and assessments, except special assessments for sidewalk and building restrictions.''

Upon the following day this was altered by the following endorsement on the instrument:

''Sept. 25th, 1913. The within contract is reconstructed to comply with new terms, viz: trust deed of $1800 at eight per cent to remain on the lots and seven hundred ($700) cash instead of $2000 trust deed at 6 per cent and five hundred dollars cash.''

This agreement was afterward executed by both parties and the real estate was duly conveyed in exchange for the cash notes, trust deed and automobile, set out in the memoranda of agreement, and all of which were delivered.

On October 21st, this action was instituted. The complaint is in the usual form, alleges the wrongful taking, possession and detention of the automobile. The answer, aside from general and special denials, alleges the sale and delivery of the machine to the defendants, and admits possession under such sale.

There were no other pleadings. It is contended by the plaintiff in error that under the circumstances of this case, replevin will not lie; that the contract constituted a single transaction, and that the plaintiff cannot elect to affirm it in part and disaffirm it in another part; that the circumstances bring it within the well settled rule of law that the plaintiff is confined to one of two remedies; either to rescind the contract, or to sue for damages on account of deceit.

When we consider the memoranda in the light of the plaintiff's testimony, that; ''The deal was that $4500 was to paid for the lots; $4500 the price, $2000 of which

is represented in the automobile and the balance was cov-. ered by the cash payment and the notes,'' it is clear that the contract was for the purchase by the plaintiff of the lots, for which he was to pay $4500, two thousand of which to be represented by the automobile.

It seems plain under this state of facts, that if there was sufficient fraud to vitiate the contract, it must of necessity apply to the entire contract. This is particularly apparent when it appears that the only claim of the plaintiff is as to the alleged misrepresentation of the value of the lots. He could have no greater right to recover the automobile as a single item of payment, than the notes, which represented another item of the payment.

The rule of law in this regard, in this jurisdiction, is:

''First, to rescind the contract, second, to sue for damages on account of the deceit. These remedies are inconsistent, not concurrent. Both were not open to plaintiff, and when once they made their election to sue for damages, they were bound thereby, and could not thereafter pursue the other remedy. In choosing, as they did, to bring this action for damages, they thereby affirmed the contract, and if they recover at all, it must be upon the case as made, and not upon some other theory. Had they elected to rescind, the contract must have been rescinded *in toto;* and when they did elect to sue for damages on account of the deceit, the contract must be affirmed *in toto,* and not affirmed in part and disaffirmed in part.'' *Cole v. Smith,* 26 Colo. 505, 58 Pac. 1086.

''When a party has been induced to enter into a contract by fraud of the other party thereto, he has two remedies: (1) To rescind, and be reimbursed for the money expended thereunder, or (2) he may waive the right to rescind and have an action for damages resulting from the fraud. When, however, he elects to waive the fraud,

such election is irrevocable and his remedy thereafter is an action for damages   *   *   *   It is a settled rule of law that where a party has an election to rescind a contract he must rescind it wholly or not at all.  He cannot consider it void for one purpose and in force for another." *Gordon Tiger Mining Co. v. Brown,* 56 Colo. 301, 138 Pac. 51.

But the defendant in error contends that this case is not within this rule for the reason that Walker, the defendant, was his agent, and seeks to invoke the rule, that the law does not permit an agent to purchase from his principal, and resell at a profit. *Finnerty v. Fritz,* 5 Colo. 174.

It appears that at the time of the transaction the lots were owned by the Boulevard Realty Company. There was no concealment of this fact, for the plaintiff and his associate were taken to the office of this company, and talked with its secretary before an agreement for the purchase was closed.

It seems that the realty company had listed these lots for sale with the defendant and other real estate dealers.  That while the defendant was negotiating for the sale to plaintiff, another real estate dealer had closed a contract with the realty company for a sale of the lots to a client, and that the defendant when so advised, secured an assignment of this contract, and thus was enabled to consummate the proposed deal with the plaintiff.

The agency claimed as between plaintiff and defendant, was that the defendant was the agent of plaintiff to sell the automobile.  The testimony does not justify this conclusion.  It does not appear that the plaintiff agreed to pay the defendant any commission, and it is admitted that neither the plaintiff nor the realty company paid the defendant any commission in the entire transaction.

The memoranda of agreement, and the testimony of all parties discloses that the contract as negotiated and completed, was between the plaintiff on the one hand, and the defendant on the other.

It appears without question, that the defendant, a real estate broker, was endeavoring to sell plaintiff a home, and had taken him to look at several properties, none of which suited. The plaintiff so testifies, and says:

"About the 1st of last September, after Walker had been to see me several times about different trades, he came to me about a Premier car. I said to him that we were anxious to sell it; it was simply out there in the garage where people could not see it. I told him it was getting along where you could not dispose of 1913 cars; if he would sell it we would give him a commission. He wanted to know if we would consider a trade; I said, 'Yes,' if he had a good property that had prospective value; where he could turn the car in, we would do that. A few days later he came back and said there was a company in town going out of business that owned a block in Park Hill and that he thought he could get one of the stockholders to take this car, if we would put a right value on it."

It will be seen that while the plaintiff suggested a commission for the sale of the automobile, the defendant did not agree to it, but submitted the counter proposition to sell him a property wherein the machine might be taken in trade.

At this time, and for some time prior, the defendant was trying to sell the plaintiff a property, and the whole record negatives the suggestion that the defendant was acting as the agent of plaintiff, for the sale of an automobile other than it might be included as a part of the purchase price.

It appears that the automobile was owned by the Wallace Motor Company, of which the plaintiff and one

Quine were equal owners. Plaintiff testifies as to the final closing of the trade as follows:

"Then I went with Mr. Walker to the office of the corporation that owned the real estate; he took me to the office, introduced me to Mr. Woodrow the secretary of the company. I met Mr. Woodrow and talked with him about it; he being an attorney, he also examined the title and he said to me that the title to the lots was good. I told him that I had to go back to Trinidad that night and would leave the matter to Mr. Walker to close up; that he had been acting for me in trading this car in, and I noticed the surprise in his face when he heard the word automobile. I went and signed the notes for $1800 that was to be paid later on. We paid $700 cash. I told Mr. Walker I was leaving for Trinidad that night and he could leave the deed with Mrs. MacMillan and I would leave the trust deed and notes with her and he could see that the deed was properly recorded. I gave him a bill of sale for the automobile that evening. I said: 'Mr. Quine has sold his interest in that machine to me personally.'"

It also appears that the realty company had listed the property with other agents, and perhaps with the defendant, for $2700 and that this sum plus the sum paid to the party who had secured the contract, was the total cost to the defendant. But this fact alone does not of itself constitute fraud.

The plaintiff testifies that defendant represented that the company held the property at $4500. The defendant testifies on the contrary, and that he fixed the price to the plaintiff at the sum and said that it was worth it; that the improvement taxes taxed against the property were all paid, and that like adjoining and surrounding properties, with such taxes unpaid were held at the price he was asking for the property in question. He

also introduced several real estate men as witnesses for the purpose of showing the value of the property, which testimony upon objection of the plaintiff was excluded by the court.

It is agreed that the plaintiff was purchasing the property for the purpose of erecting a dwelling, to be used as a home, and that the plaintiff, his wife and his associate Quine, had inspected it. The latter says that he and plaintiff inspected it three or four times before the purchase.

Under this state of facts and in veiw of the conflict of testimony as to representations alleged to constitute fraud, the question was clearly one for the jury under proper instructions. But the court instructed the jury as follows:

"The plaintiff bases his title upon the fraud and misrepresentation of defendant Walker (and incidentally claims defendant Shelden is charged as an associate in that fraud, but this will be referred to later) and the evidence, taken as a whole, shows as a matter of law that the defendant Walker was guilty of fraud or misrepresentation, and it follows as a matter of law, as between him and plaintiff, the title to the car did not pass from plaintiff to him."

This instruction was in effect a direction to the jury to return a verdict for the plaintiff and was of itself reversible error.

The defendant in error invokes the rule that the owner of property may maintain replevin against one who obtains possession of it by means of false representations.

The circumstances of this case do not bring it within that rule. Here there was a contract of sale and it is sought to retain what the plaintiff received, and to procure a return of a part of what he has parted with in exchange. If the contract is vitiated by reason of fraud,

then the entire contract must be annulled and the plaintiff must elect as to his remedy.

The plaintiff claims under an allegation of misrepresentation and fraud as to the value of the premises he purchased. In such a case the question is one of compensation and the measure of damages is the difference between the contract price and the reasonable market value of the land. In replevin the measure of damage, in the absence of specific recovery, is the value of the thing sought to be recovered.

This is so inconsistent with the rule as to measure of damage to be applied in a case of the character of the one at bar, as to make it clear that action in replevin will not lie.

Former opinion withdrawn, judgment reversed with instruction to dismiss the cause.

*En banc.*

GABBERT, C. J., HILL, J., and GARRIGUES, J., dissent.