DAVID B. HUTCHINSON *et al.*

*v.*

JOHN A. CRANE *et al.*

*Filed at Springfield September 30, 1881.*

1. PARTY—*holder of notes indorsed in blank.* Where the payee of a note delivers the same, indorsed in blank, to indemnify a member of a firm as his security, and suit in equity is afterwards brought in the name of the firm to enforce payment of such note, the maker of the note can not be heard to object that the suit is brought in the name of the firm instead of that of the

individual partner. They will be presumed to be the legal holders as against the maker, who has no interest as to the party entitled to payment.

2. ASSIGNMENT—*of note by vendor of land carries his security.* Where a bond is given for a deed to land to be made upon payment of the notes given for the unpaid price, the bond and notes will constitute one contract, and they will be treated in equity as a security in the nature of a mortgage, and a sale and assignment of the notes will pass the security, which may be enforced in the name of the assignee.

3. VENDOR AND PURCHASER—*latter obtaining deed by fraud.* Where the purchaser of land under a bond for a deed induces his vendor to make a deed, to be left with the assignee of the notes given for the purchase money, for delivery only upon payment of such notes, and fraudulently obtains possession of such deed without payment, and puts the same upon record, such deed will be set aside as to him and a purchaser from him with notice of the fraud, and the land be ordered sold for the payment of the notes.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Sangamon county; the Hon. CHARLES S. ZANE, Judge, presiding.

Mr. OSCAR A. DeLEUW, for the plaintiffs in error:

Before Crane & Manson can subject this land to sale upon the theory that they have a vendor's lien, they must, as the assignees of the lien, be in a condition to convey. *Thompson* v. *Shoemaker*, 68 Ill. 256.

The complainants had no title to the notes. The bill charges an assignment to Crane & Manson, while the whole proof shows that John A. Crane, and he alone, holds these notes, and only as collaterals.

Notice or knowledge must be brought home to Pond of this fraudulent transaction, or the case fails.

The placing the notes in Crane's hands as collaterals, he having no control or even possession of any deed or title to convey, does not create the express lien of a *quasi* mortgage, which is enforceable by the assignee of the vendor. *Richards* v. *Leaming*, 27 Ill. 431; *Bonnell* v. *Holt*, 89 id. 71; *Wing* v. *Goodnow*, 75 id. 159; *Elder* v. *Jones*, 85 id. 384; *Baston* v. *Clifford*, 68 id. 67.

Complainants having framed their bill on the theory of the existence of a vendor's lien, can not shift their ground, and claim relief on other grounds. *Vennum* v. *Vennum*, 61 Ill. 331.

The record discloses a mere delivery of the notes to John A. Crane as collateral security. Manson has no interest in this proceeding. Crane indorsed for Barrett, and Barrett turned these notes over to Crane, to be held as collateral to indemnify him in becoming such indorser. As Manson had no interest, he can not litigate. *Mansfield* v. *Hoagland*, 46 Ill. 359.

Messrs. MORRISON, WHITLOCK & LIPPINCOTT, for the defendants in error:

1. The deed was never delivered either by the consent of Barrett or of Crane & Manson, and was therefore void, and passed no title. Pond could obtain no interest in the land from Hutchinson, who held no title. *Whittaker* v. *Miller*, 83 Ill. 581; *Skinner et al.* v. *Baker et al.* 79 id. 496; *Dale* v. *Lincoln*, 62 id. 22; *Stanley* v. *Valentine*, 79 id. 544. Therefore Pond's interest, if any, was and is subordinate to the rights of complainants in the bill.

2. The notes were payable to Barrett, and were indorsed by him in blank, by writing his name on the back thereof, and delivered to Crane, who signed the note with Barrett for $1500. The notes then passed by delivery, and were in possession of Crane & Manson, who are and were partners in business. The notes were produced by complainants in the bill; this was all that was necessary in order to show title in Crane & Manson, and to show their right to a decree upon the other points appearing in the testimony in the case. It is wholly immaterial to Hutchinson how Manson acquired interest in the debt evidenced by the notes. We insist, therefore, there is no force in the point that Crane, alone, was the party in interest.

3. The testimony clearly shows the deed came into the possession of David B. Hutchinson by his fraudulent act,

and without the consent of either Crane & Manson, or Barrett.

This deed was fraudulent as to the debt evidenced by the notes in evidence, but it was good as to the interest of Barrett or of Hutchinson, as his grantors, over and above the lien. No tender of a deed was necessary in the case. The decree is right.

Mr. JUSTICE WALKER delivered the opinion of the Court:

In the month of March, 1876, one Barrett, being the owner of the undivided third of three lots in the town of Waverly, Morgan county, Ill., on that day sold his interest therein to plaintiff in error Hutchinson, who paid a part of the purchase money in cash, and gave several promissory notes, due in one, two and three years, for the balance. The deferred payments aggregated the sum of $1050. Barrett, at the time, executed a bond for a conveyance of that interest in the lots to Hutchinson, on payment of the notes, and the bond was recorded. Hutchinson took possession of the property at the time of sale. There was, at that time, a steam mill on the property. It is alleged that prior to the maturity of either of the notes, Barrett indorsed the notes in blank and delivered them to Crane, of the firm of Crane & Manson, to indemnify Crane for his liability for Barrett; that they still hold the notes; that Hutchinson, at the time, had notice of the transfer and delivery of the notes to Crane & Manson, and paid to them interest for one year, but the balance remained unpaid; that Hutchinson, in February, 1878, applied to Barrett to make him a deed for the lots, and proposed to give a mortgage on them to secure the unpaid purchase money, but Barrett declined, but upon consultation with Crane it was agreed that Barrett and wife should make the deed for the undivided third of the lots, and deposit the same with Crane, to be delivered by him to Hutchinson, only on the payment of the notes and interest; that in pursuance of this agree-

ment a deed was duly executed, but it was never delivered to Crane; that Hutchinson fraudulently obtained possession of the deed without its being delivered to him, and had it recorded, without the consent or knowledge of Barrett, Crane or Manson. Hutchinson and wife conveyed the premises to Lambert Pond, and that deed was recorded. It is claimed this latter conveyance was fraudulent, as Pond had notice of the fraud, and that the notes were unpaid.

The bill charges these facts as a fraud on Crane & Manson by Hutchinson and Pond, and prays that the deed to the latter be set aside and the record thereof be cancelled, and the property be sold for the payment of the purchase money evidenced by the notes held by Crane & Manson. Barrett and Pond, who were made defendants with Hutchinson, were defaulted. On a hearing, the circuit court granted the relief sought, and Hutchinson and Pond removed the case to the Appellate Court, where the decree of the circuit court was affirmed, and they bring the case to this court, and urge a reversal.

It is urged, that as the notes were pledged to Crane to indemnify him for a liability for Barrett, Manson has no interest in the matter, and that he is an improper party. We are unable to perceive any force in this objection. The notes were indorsed in blank, and are due and unpaid, and Hutchinson seems to have paid interest on them to Crane & Manson. If they do not hold the lien jointly, that only concerns Barrett, and he admits by his default that the notes are held by them, and that they have the right to collect and receive the money; and Crane, with Manson, claims the benefit of the notes is to both of them, by this bill. Being assigned in blank, they are presumed to be the legal holders, and it only concerns Hutchinson to pay the notes, which are due and unpaid. It does not matter to him to whom he pays them. If there is any question as to who is entitled to the money when paid, Barrett and Crane & Manson can settle

18—100 ILL.

that question between themselves. They do not ask us to settle it, and it will be proper for us to do so only when called on by them.

Then, can Crane & Manson enforce the payment of these notes? We, on the authority of *Wright* v. *Troutman*, 81 Ill. 374, think they may. It was held, in that case, that the holders, by assignment, of notes given for the purchase money of land, where a bond for title had been given by the vendor for the conveyance of the land, might in equity enforce their claim by subjecting the land to its payment. It was there held that notes thus given, and a bond executed for a conveyance, constituted one instrument, and will be regarded as a security in the nature of a mortgage, by a court of equity, which may be sold by assignment, and the assignee may enforce the lien or mortgage by a bill in equity. The rule applied on the facts in that case is applicable to the facts in this. This case requires the application of the same rule. When Barrett assigned and delivered the notes in blank, he assigned this equitable lien, in the nature of a mortgage, to whomever might become the holder, and such holder is empowered to enforce the lien and compel payment of the money from the land thus sold.

It is, however, urged, that as Pond purchased without notice, and in good faith, he must be protected. Hutchinson, in procuring the deed and placing it on record, committed a gross fraud on defendants in error. It was agreed, and of this there seems to be no doubt, that when Barrett executed the deed it should be left in Crane's custody, to be held *in escrow*, until the notes held by defendants in error were fully paid, and then to be delivered to Hutchinson. He was a party, and an active party, to this arrangement, but instead of carrying it out, he, under false and fraudulent pretences, obtained possession of it, and conveyed the land, on a real or pretended consideration, to his father-in-law, Pond. His acts in the matter seem to have been a

fraudulent scheme to procure the deed, and to perpetrate the fraud on defendants in error. His acts can not be called fair or honest, but were in gross violation of fair dealing.

When examined, Pond seems to have acted singularly in receiving the deed. He was at the time residing in another county, nearly a hundred miles distant, and yet he did not examine the title or the property. He purchased a third of the mill for $2000, when he was not in, nor does he claim that he ever intended to embark in, the milling business. He assigns no plausible reason for the purchase. He only claims that he had loaned Hutchinson $1000 without security. But he claims that Hutchinson promised to give him a mortgage on that third when he obtained a deed, or to secure the loan in some other manner; but when the deed was presented he did not insist on a mortgage, but on the request of his son-in-law purchased the property at $2000, cancelling the $1000 note and interest, and giving his two notes for $400 each, due in two and four years. Again, after this suit was brought, he paid the first before it fell due, not being sufficiently concerned to await and learn whether he would hold the title. If this is a fair and honest transaction, it is most singular, and out of the usual course of business. Men do not usually so act when such a sum of money is really involved. He says he regarded Hutchinson as solvent, and it was therefore unnecessary to purchase to save his debt. If the property was worth $2000, it was ample security for his debt; but he did not choose to take a mortgage, as he claims it was promised when the title should be procured. His effort to induce the belief that he expected a mortgage on the property when he loaned the money, falls far short of proving the money was loaned with a definite understanding and positive agreement that such a mortgage would ever be given. It only appears there was some loose talk about a mortgage when a deed should be obtained. We are fully satisfied that the money was not loaned on the land as secu-

rity, or on any definite understanding that it should become security. We are strongly impressed that Pond was a party to the fraud.

All of the facts in the case considered, we are impelled to the conclusion that Hutchinson committed a gross fraud in placing the deed from Barrett to him, and recording it, instead of delivering it to Crane, in pursuance of the agreement, and that he fraudulently sold the property to Pond, and that the latter had actual notice of the fact, or was put on inquiry by the circumstances under which he purchased.

We perceive no error in the record, and the decree of the Appellate Court is affirmed.

*Decree affirmed.*