No. 12,321.

Fairview Mining Corporation v. American Mines and Smelting Company.

Decided May 20, 1929.

Mr. ALBERT G. CRAIG, Messrs. EWING & ARNOLD, for plaintiff in error.

Messrs. MARTIN, NEWCOMER & FITZGERALD, Mr. S. E. NAUGLE, for defendant in error.

*In Department.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE grantors of plaintiff corporation, American Mines & Smelting Company, owners of mining properties in Boulder county, gave to Allen Burris, the grantor of defendant, the Fairview Mining Corporation, a mining lease of, and option to buy, these properties. The purchase price, by written agreement of October 15, 1924, evidencing the transaction, was $150,000, of which the sum of $25,000 was to be paid on or before October 15, 1925; $50,000 on or before October 15, 1926; and the balance of $75,000 on or before October 15, 1927. The lessee and holder of the option was required to enter upon the properties and numerous operating duties were imposed upon him by the agreement. Royalties were to be applied and credited on the purchase price, as well as about $1,700 which he was required to pay for back taxes and insurance. A few days later Burris assigned this agreement and option to the defendant corporation, the Fairview Mining Corporation, which went into possession and began immediate operations, paid the amount of the back taxes and insurance and proceeded to comply with the various operating terms and conditions prescribed by the written contract. When the first payment became due under the option on October 15, 1925, the defendant Fairview Corporation, being un-

able to pay the same, was given by the original owners, and before the plaintiff corporation, American Mines & Smelting Company, acquired ownership, an extension agreement for a period of six months, and at the end of that period, the defendant, being unable to comply therewith, was given another extension agreement in which was a recitation that only a portion of the first prescribed payment had been made, and that certain questions and disputed points were to be settled in and by the extension agreement whereby the defendant was given until October 15, 1926, to comply therewith, and additional obligations were imposed on the defendant and certain questions that had arisen as to the title were by the same adjusted. These grantors or vendors of plaintiff on October 1, 1926, granted to the defendant a further extension agreement and defendant was therein credited with $20,000 on the purchase price in consideration of extralateral property rights which the defendant released and adjusted with the plaintiff, and $16,509.69 were paid on the purchase price out of royalties received up to that date, and the time for payment of the balance then due, about $38,000 of the $75,000 of the purchase price, was extended to October 15, 1928. The defendant on its part made various concessions and agreements not necessary to mention. Thereafter and before October 15, 1927, to which time the balance due on the first $75,000 payment had been extended, the original owners of the property sold and conveyed their interest in the premises to the plaintiff corporation, American Mines & Smelting Company, and on the day of the purchase the defendant corporation paid in cash to plaintiff on account of the purchase price the sum of $30,743.99. From time to time before the beginning of the present action the defendant has paid on the purchase price, under this option to the plaintiff and its grantors, royalties in the aggregate sum of $33,451.81, which, together with the taxes and insurance premiums and the cash payments above mentioned, and the $20,000 in property

rights received and accepted by the plaintiff as a cash payment, make a total of $85,984.76. Additional considerations moving from the defendant are that it has mined and operated at great expense and greatly improved and enhanced the value of the mining property by numerous and expensive improvements consisting of accessories, made a part of the mill on the properties, at an expense of about $6,400; a new air compressor at about $3,400; a compressor building at $875, and office and storeroom building at about $1,800; necessary barns and sheds, $650; and a blacksmith shop at about $500, all of which improvements are permanent in character and made for the development of the real estate itself. In addition to these improvements, defendant has expended $35,806, wholly exclusive of the expense of extracting ore, consisting of improvements and development work of the mine itself, all of which are of a permanent and lasting benefit to the premises and to their value. And besides, for other physical improvements and mine development work, defendant has expended over $49,000. During the existence of the lease and option the value of the premises has not fluctuated or increased, except as it has been enhanced by the work and expenditures of the defendant. Plaintiff American Mines & Smelting Company acquired its legal title from the former owners in August, 1927, and at that time, as already stated, received in cash from the defendant $30,-000. On October 15, 1927, it had negotiations with the defendant concerning extension of time of payment of the balance of the purchase price. On August 21, 1928, plaintiff notified the defendant by letter that no further extension of time would be granted and that on the due date it would expect full payment of the balance due, and if the same was not made it would take over the property. On October 6, 1928, the defendant by letter notified plaintiff's president that it expected to be ready to make final payment of the balance of the purchase price and requested plaintiff to file with the First National

Bank of Denver a proper mining deed in favor of the defendant for the properties. The plaintiff deposited this deed as requested, but the defendant did not pay the balance due on October 15, and plaintiff immediately served upon defendant notice of forfeiture and in the notice stated that there was a balance due upon the option payment maturing October 15, 1928, of approximately $64,000. Defendant refused to vacate the property and was in possession of the same up to the time that plaintiff brought this action to recover possession on November 10, 1928.

We have thus summarized the facts as above stated, which are pleaded in greater detail by the defendant in the second defense of its second amended answer, as the best way to present the vital issues to be determined upon this review. The first defense of the answer in some of its allegations admitted, and in others denied, the averments of the complaint. The plaintiff filed a demurrer for insufficient facts to the second amended defense as above outlined, based on the option to purchase, which the court sustained. Defendant elected to stand thereby, and the trial court without a jury proceeded to try the issues joined by defendant's denial in its first defense of certain allegations of the complaint; and upon the court's findings on such issue in favor of plaintiff, judgment passed in plaintiff's favor for possession of the mining property, to review which is the object of this writ of error.

■ We first observe that plaintiff chose, as its remedy, a legal action to recover possession of the mining claims. It had that right if the facts pleaded in its complaint are true and there is nothing in the course of the dealings between these parties to detract from their force. Plaintiff might have proceeded in equity if the facts are as pleaded by the defendant in its second amended answer, but it was not bound to do so if the facts are only those which the complaint contains. Doubtless desiring to get possession as quickly as possible,

plaintiff selected the speediest remedy available. In doing so, however, it may not in this jurisdiction—where equitable defenses to a legal cause of action are allowed both as matter of defense and as ground for affirmative equitable relief—cut off the right of the defendant to plead as a defense to plaintiff's legal cause of action, or as grounds for equitable relief, its own equities, which as here, in effect, convert what was instituted as a legal action, under the old practice, into a suit in equity. The second defense of the second amended answer above summarized has the potency claimed for it by the defendant. Indeed, the trial court, in which both parties participated and acquiesced, in effect so determined, and it thereupon proceeded to treat this equitable defense on its merits, both as a defense and as stating grounds for affirmative equitable relief, and because it held that it was not meritorious and did not state a good defense or cause of action for affirmative relief, sustained plaintiff's demurrer thereto. The controlling question, therefore, on this review is whether the second amended defense states a ground for equitable relief. A diligent examination of this record, in the light of the principles of law applicable, satisfies us that the trial court was in error in its ruling on plaintiff's demurrer to the second defense of the answer.

■ If the agreement of October 15, 1924, for lack of consideration was nothing but a mere lease and naked option, it was thereafter merged into a contract of sale and purchase by the so-called extension agreements of October 15, 1925, and October 15, 1926, wherein the defendant was credited by plaintiff's grantors with a payment of $20,000, on the agreed purchase price of $150,000, which sum they considered as the value of extralateral rights and property conveyed to them by defendant. At the same time and as part of the same transaction the defendant was credited on the purchase price with an additional sum of $16,509.69 for royalties to be applied on, and as part of, the purchase price. Later

$30,743.99 were paid in cash by the defendant and royalties were increased to $33,451.81. It is, therefore, more than apparent, it is conclusive, that thereby, if not before, the rights and relation of these parties were, and the same have continued to be, those of grantor or seller, and grantee or purchaser; not merely the relation that exists between the parties to a mere option or lease. The defendant, as such grantee or vendee, has paid in cash, and what the plaintiff and its predecessors in title, grantors, have accepted as the equivalent of cash, more than $85,000 on account of the purchase price of these mining properties, being more than one-half of the total consideration agreed upon. Plaintiff acknowledges in its notice of forfeiture that of the entire purchase price of $150,000 only about $64,000 were then still due and unpaid. The argument pro and con as to whether the contract of sale contains a clause or ground of forfeiture for non-payment of the purchase price or part thereof, as and when such payment becomes due and payable, is, we think, immaterial; at least, not important.

██ ██ There is no specific provision in the contract as to forfeiture for non-payment and time is not thereby made the essence of the contract. But if, because of the character of the property, or for any other reason a forfeiture might arise and be enforced, equity, which always leans against a forfeiture, will not enforce it if the party insisting upon it may be made whole. This transaction is an ordinary one of a lease coupled with an option of purchase. The thing which a grantor is interested in is the purchase price. If, in due course, he gets that price, he ought not to complain. This doctrine is too well recognized to call for citation of cases. The conduct of the parties themselves, the fact that the one sought, and the other granted from time to time, extensions of payment, the uncertainties attending all mining operations, the result of which can never be safely predicted, and various other considerations appearing in this evidence, make it apparent that neither party to the

contract considered time as the essence thereof as to payment, or that forfeiture was thought of as a remedy for lack of punctuality therein.

The grantors in this contract retained title to the property doubtless as security for the payment of the agreed purchase price. If so, the relation between them and the grantee is the same as if title had passed from the grantor to the grantee and the latter had conveyed the title back to the grantor as security for such payment. *Pope v. Parker*, 84 Colo. 535, 271 Pac. 1118. Moreover, the language of the contract wherein the provision is that royalties paid under the provisions of paragraph 11, should be considered as rent and belong to the plaintiffs or lessors and not as a penalty or forfeiture, but as liquidated damages, and other provisions of similar import indicate that the grantors and lessors were not intending to insist upon the penalty of a forfeiture. As authority for our conclusion above reached, among other cases, see: *Phares v. Don Carlos*, 71 Colo. 508, 208 Pac. 458; *Byers v. Denver Circle R. Co.*, 13 Colo. 552, 556, 22 Pac. 951; *Foster v. Coffey*, 71 Colo. 171, 204 Pac. 900; *Flora v. Glover*, 69 Colo. 210, 193 Pac. 665; *Walker Inv. Co. v. Fleming*, 79 Colo. 434, 246 Pac. 207; *Sharshel v. Smith*, 66 Colo. 375, 181 Pac. 541.

For a general discussion of the subject see 5 Pom. Eq. Jur. (2d Ed.), §2238, et seq; Story's Eq. Jur. (14th Ed.), vol. 3, p. 342, §§1726, 1727; *Hansbrough v. Peck*, 5 Wall 497, 18 L. Ed. 520.

Such being the law applicable to this case, and since with us separation of causes into law and equity no longer exists, plaintiff was wrong, under the admitted facts in the second defense of the answer, in resorting to an action for the recovery of possession. Plaintiff should have employed the equitable remedy of foreclosure and sale to the case as made by the admitted allegations of the answer, which is the same as, or similar to, that of grantor and grantee where the grantor retains the legal title of the property, which is the subject mat-

ter of sale, in the nature of security for payment of the purchase price or the balance of the purchase price due. In substance, the transaction stated in this defense is that of an owner of land who is selling it on time or credit, and instead of conveying the legal title of the property to the grantee, retains the same as security for payment of the purchase price. It is similar also to a transaction between a creditor and debtor where the debtor has by warranty deed conveyed land to his creditor to secure the payment of the debt, which transaction courts generally treat as, in substance, a mortgage, in which case, and in the case now before us, the proper and only remedy or procedure is by foreclosure and sale, since section 281 of our Code of Civil Procedure expressly declares that a mortgage of real property shall not be deemed a conveyance whatever its terms, so as to enable the owner of a mortgage to recover possession of the real property without foreclosure and sale. This was explicitly ruled in our recent case of *Pope v. Parker, supra.* The transaction there was like the one now under review. The parties entered into a contract for the sale of land, the grantor retaining title to the land. The consideration was to be paid in installments and if the purchaser defaulted the grantor or vendor was given the right to enter the premises and sell them at public sale to pay the purchase price. We held that this was a mortgage in legal effect and that the provisions in the contract reserving the right in the vendor to enter the premises and sell them at public sale, was void and that the vendor's or grantor's remedy on purchaser's default, and the only remedy, was by action to foreclose and sell.

If the foregoing views are sound it necessarily follows that the judgment is wrong. To save time and costs to the parties we hereby direct the district court to set aside its judgment and vacate the same, and to give the plaintiff a reasonable time within which to file a new complaint, in the nature of a suit for foreclosure and sale

of the mining property for the balance due on the purchase price. Pleadings shall be as in that sort of an action. If the plaintiff elects not to do so, or fails within a reasonable time to file such a new complaint, the trial court is directed to dismiss the action at the plaintiff's costs. Such further proceedings as may be had below, after the remanding of the cause, to be not inconsistent with the views expressed in this opinion and they must conform to, and be appropriate to proceedings in, an action of foreclosure and sale.

MR. JUSTICE ADAMS, sitting for MR. CHIEF JUSTICE WHITFORD, MR. JUSTICE MOORE and MR. JUSTICE ALTER concur.