# No. 12,532.

## AMERICAN MORTGAGE COMPANY *v.* LOGAN ET AL.

(7 P. [2d] 953)

Decided January 21, 1932.

158

Mr. Albert G. Craig, Mr. Earle F. Wingren, Mr. Charles F. Brannan, for plaintiff in error.

Mr. Mortimer Stone, for defendants in error.

*En Banc.*

Mr. Justice Butler delivered the opinion of the court.

Daisy D., George R. and William J. Logan sued the American Mortgage Company to have a certain contract for the sale of farm land in Larimer county annulled, to remove from their title to the land the cloud created by the recording of the contract, and to quiet their title to the land. To reverse a decree in favor of the Logans, the mortgage company sued out this writ of error.

On June 15, 1928, the Logans, who owned and farmed the land, entered into an agreement with the mortgage company concerning a sale of the land. It provided that *"if* the party of the second part [the mortgage company] shall *first* make the payments * * * herein mentioned to be made, * * * the said parties of the first part [the Logans] hereby agree to convey to the said party of the second part the following described * * *

parcels of land," etc. The price was $28,000, payable as follows: "Eight thousand dollars cash in hand paid, the receipt whereof is hereby acknowledged, and which amount is represented by eight hundred shares of preferred 7% stock of American Mortgage Company of Denver, Colorado (shares $10.00 each), eighteen thousand dollars cash payable on or before Nov. 1st, 1926, and on delivery of deeds and approval of titles, and two thousand dollars note of American Mortgage Company due and payable one year from date," with interest. The $2,000, for which the note was given, represented the value of the hay on the premises. Time was made of the essence of the contract, and it was provided that in case of failure of the mortgage company to pay any installment within the prescribed time, the contract might be forfeited and determined at the election of the Logans, upon giving a thirty-day notice of such election; and that in that event all payments already made should be retained by the Logans as liquidated damages. A certificate for the stock was delivered to the Logans.

█ In the absence of an express or implied provision in the contract conferring the right, a vendee in such a contract is not entitled to possession prior to payment of the purchase price. 27 R. C. L., p. 549. The contract in this case did not confer such right upon the mortgage company, and the extension agreements, hereinafter referred to, expressly recognized the right of the Logans to remain in possession. They have continued in possession to the present time. On October 5, 1926, the time within which to make the $18,000 payment was extended to May 15, 1927, the Logans agreed to retain the hay, and the note for $2,000 was cancelled. The payment was not made, as required, and on May 23, 1927, the time for paying the $18,000 was again extended, this time to November 1, 1927. Both extension agreements required the mortgage company to pay interest on the deferred payment, and the second required it to pay taxes. The mortgage company paid $540 on account of interest,

which was the only cash payment made by it. About a week before the final payment became due under the second extension agreement, the mortgage company, for the first time, objected that there was no water decree. At the trial the mortgage company claimed that the Logans had represented that they owned decreed water rights, but the court found that no such representation had been made. On February 15, 1928, the mortgage company having failed to make the required payment, the Logans gave a thirty-day notice of their election to declare the contract forfeited and determined; whereupon the mortgage company filed the contract for record. Though the company was financially able to do so—its officers testified that it had the money—it did not, within the thirty-day period or at any time, pay or offer to pay the taxes or the balance of the principal and interest due under the contract. After the expiration of the thirty days the Logans commenced suit.

The contention of the mortgage company is that the transaction created between the mortgage company and the Logans the relation of mortgagor and mortgagees, and, therefore, that in order to foreclose the company's rights there must be a judicial foreclosure as in case of mortgages, with the accompanying statutory right of redemption. With that contention we do not agree.

The contract is one customarily used where real property is sold on installments, with the exception that ordinarily there is a provision for immediate possession of the property by the vendee. Section 6369, Compiled Laws, provides that where a vendee, who has entered into possession under an agreement to purchase, fails to comply with the agreement and withholds possession from the vendor, after demand therefor, he is guilty of unlawful detainer. In such case the vendor may recover possession in an action brought under the unlawful detainer act. Section 281, Code of Civil Procedure, provides: ''A mortgage of real property shall not be deemed

a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the real property without foreclosure and sale.'' These two provisions clearly indicate that, in the view of the legislature, such a contract as the one involved in this suit is not a mortgage and is not to be treated as such; for if it were, either actually or in effect, a mortgage, the vendor could not recover possession under the unlawful detainer act until after foreclosure and sale, and then only in the event that he purchased at the sale.

██ That unlawful detainer will lie where a vendee, in possession under a contract to purchase, withholds possession from the vendor after default and demand, see *Schiffner v. Chicago Title & Trust Co.,* 79 Colo. 249, 244 Pac. 1012. Such was the procedure in *Ruth v. Smith,* 29 Colo. 154, 68 Pac. 278. Or, in such case, the vendor may sue in ejectment under sections 285 and 287 of the Code of Civil Procedure. *Roller v. Smith,* 76 Colo. 371, 231 Pac. 656. If the vendor is in possession, he may sue to quiet title under section 275 of the Code. *Scroggs v. Harkness Heights Land Co.,* 76 Colo. 597, 233 Pac. 831. In the Schiffner case we said: ''It is next argued that the contract must be treated as an equitable mortgage, but there can be no mortgage of any kind unless the mortgagor has some real estate to pledge. This the defendant did not have. Whatever rights, either legal or equitable, he had in the land did not affect the contract in question in its character as an agreement to purchase. Being such an agreement, the plaintiff had the right to proceed under the unlawful detainer act.'' And in the Roller case the law is stated thus: ''The elimination of the equitable relief was right. The contract provided that upon failure to pay installments the vendee's rights and his possession should be forfeited. It was on the ground of failure to pay installments that the suit was brought. This was to enforce, not to cancel the contract. There was no function for equity to perform. The com-

plaint should have been ejectment, drawn under Code of 1921, §287.''

■ Although the case of *Gordon Tiger Mining Co. v. Brown,* 56 Colo. 301, 138 Pac. 51, concerned an option, and the decision, therefore, does not control the present case, the opinion contains the following language that is applicable here: ''When by a contract for the sale of real property the vesting of title is made to depend upon conditions precedent, with the provision that a failure to comply with such conditions shall operate as a forfeiture of the rights of the vendee, then his failure to perform such conditions operates as a forfeiture of his rights. 1 Pomeroy's Equity Jurisprudence, section 455. In determining the question under consideration the distinction between conditions precedent and subsequent in contracts for the sale of real estate must be borne in mind.'' In the contract now before us, as we have seen, the payment of the purchase price is expressly made a condition precedent to the vesting of title. In *Mesa Market Co. v. Crosby* (a Colorado case), 98 C. C. A. 70, 174 Fed. 96, it was held, as stated in the syllabus: ''A provision in a contract for the sale of real estate, under which the purchaser is given possession, that if he shall make default in the performance of any of his engagements the vendor may resume possession and terminate all rights of the purchaser, and that in such case the contract shall become one of lease, and any payments by the purchaser or improvements made on the property shall be considered as rental, is valid and enforceable.''

But the mortgage company contends that all this has been changed by our decision in *Pope v. Parker,* 84 Colo. 535, 271 Pac. 1118, and *Fairview Mining Corporation v. American Mines & Smelting Co.,* 86 Colo. 77, 278 Pac. 800. That is a mistake. We had no intention of overruling, nor did we overrule, the cases previously decided by us and cited above, nor did we intend to modify the law as announced therein. The contracts in the Pope and the Fairview cases were radically different from the

one now before the court, and we held that, in effect, they were mortgages.

In the Pope case, supra, the contract provided for possession by the vendee and that in case of default in the payment of any installment the vendor should have the right to enter and sell the property at public sale to pay the unpaid installment of the purchase price, accounting to the vendee for any surplus. Time was not made of the essence of the contract, and there was no forfeiture clause. That such contract was, in effect, a mortgage is clear. We held that under our Code of Civil Procedure, the provision for entry and sale was void; that foreclosure could be had only in the manner provided in chapter 21 of that Code. The contract now before us is entirely different. That case, therefore, has no application to the present one. Mr. Justice Denison, who wrote the opinion, also wrote the opinions in *Roller v. Smith, supra,* and *Scroggs v. Harkness Heights Land Co., supra.* The contracts in those cases and in *Schiffner v. Chicago Title & Trust Co., supra,* and *Ruth v. Smith, supra,* were so obviously different from the contract in the Pope case that it was considered unnecessary to refer to the former cases, even for the purpose of distinguishing them.

The contract in the Fairview case, also, differed in important particulars from that under consideration here and from the contracts before the court in the Roller, Scroggs, Schiffner and Ruth cases, supra. As stated in the opinion, time was not made of the essence of the contract; there was no specific provision for forfeiture, the contract, on the contrary, indicating by its terms that the parties "were not intending to insist upon the penalty of a forfeiture"; and the title was retained as security for the payment of the purchase price. It was also stated in the opinion that the transaction in *Pope v. Parker, supra,* "was like the one * * * under review" in the Fairview case. The contract, therefore, was, in effect, a mortgage. It is to be noted, also, that there were strong equities in favor of the vendee in that case.

It appears that the vendee paid more than one-half of the purchase price; that it greatly enhanced the value of the property by making numerous and expensive improvements; that it intended to make the final payment within the time permitted by the extension agreement and expected to be able to do so; and that upon the arrival of the due date without payment having been made, the vendor immediately attempted to terminate the contract and retain all the benefits received. Mr. Justice Campbell, who wrote the opinion, also wrote the opinion in *Ruth v. Smith, supra,* and concurred in the opinion in *Schiffner v. Chicago Title & Trust Co., supra.* As the contracts in those cases were different from the contract in the Fairview case, and as there was no intention to change the law as stated in the Ruth and Schiffner cases, it was not deemed necessary to refer to them in the opinion in the Fairview case.

Counsel for the mortgage company rely upon certain language in the opinion in the Fairview case; but in that case, as in all others, the language used in the opinion must be considered in connection with the facts. It was said by Mr. Justice Campbell in *Union Pacific Ry. Co. v. Hanna,* 73 Colo. 162, 168, 214 Pac. 550, that a statement made in an opinion "should be read in the light of the facts"; and by Mr. Justice Garrigues in *Montgomery v. Colorado Springs & I. Ry. Co.,* 50 Colo. 210, 214, 114 Pac. 659, "An opinion is only authority on the point decided"; and by Mr. Justice Lamar in *German Alliance Ins. Co. v. Home Water Supply Co.,* 226 U. S. 220, 234, 33 Sup. Ct. 32, "What was said in the opinion must be limited, under well-known rules, to the facts and issues involved"; and by Mr. Justice Shiras in *Parsons v. District of Columbia,* 170 U. S. 45, 51, 18 Sup. Ct. 521, "It is trite to say that general principles announced by courts, which are perfectly sound expressions of the law under the facts of a particular case, may be wholly inapplicable in another and different case"; and by Mr. Justice White in *United States v. Eaton,* 169 U. S. 331, 348, 18 Sup. Ct.

374, "General language must be confined to the precise state of facts with reference to which it was used"; and by Chief Justice Marshall in *Ogden v. Saunders,* 12 Wheat. 213, 333, 6 L. Ed. 606, "It is a general rule, expressly recognized by the court in Sturgis v. Crowninshield, that the positive authority of a decision is coextensive only with the facts on which it is made." And see *Louisville & N. R. Co. v. County Court of Davidson,* 1 Sneed (Tenn.) 637, 695, 62 Am. Dec. 424.

We hold that the contract now before us was not a mortgage, or in the nature of a mortgage, or in effect a mortgage.

■■ Equity, it is true, abhors a forfeiture, and in a proper case will relieve against one. But the general rule is that a vendee is not entitled to relief against a forfeiture where he makes no attempt to fulfill his part of the contract, and where his default was not caused by fraud, ignorance not willful, surprise, accident, or mistake. See 40 A. L. R. 182, note. The facts herein do not bring the mortgage company within that rule. In such a case as the present one the question is not whether the court will or will not enforce a forfeiture, but whether it will or will not relieve against a forfeiture incurred willfully and without any lawful excuse. Even if there were equities entitling the mortgage company to such relief, the court would not decree a foreclosure, as in case of mortgages. The utmost that the mortgage company, in such case, could claim would be a reasonable time after default in which to perform its agreement and thereby prevent a forfeiture. But in the present case it had all the delay that equity would require. The Logans twice extended the time of payment; they then waited three months and a half after default under the second extension agreement before giving notice that they would forfeit and terminate the contract at the expiration of thirty days. The mortgage company, therefore, had the opportunity to pay and avoid a forfeiture at any time within four months and a half after default—sixteen months

and a half after the due date fixed in the original agreement. It insists upon still further delay; that is to say, the delay incident to a foreclosure of the contract as a mortgage, and an additional delay of six months, the statutory redemption period. The mortgage company is not here seeking an opportunity to pay. Its position is that it is not required to pay, and that it does not intend, or even wish, to pay. Instead of showing a disposition to proceed with the contract, it deliberately and wrongfully withheld from the Logans the dividend that had accrued upon the stock delivered to them in part payment of the purchase price, thereby necessarily impairing to some extent the value of that stock.

In the present case less than one-third of the purchase price was paid, and that was in corporate stock of the vendee, and the vendee made no improvement whatever upon the property. We need not discuss the question whether the payment of nearly all, or a very large part, and if so, what part, of the purchase price, would of itself raise an equity in favor of a vendee, entitling him to relief against a forfeiture. It is sufficient to say that in the circumstances disclosed by the record' in this case, the trial court did not err in holding that there are no equities entitling the mortgage company to such relief.

The judgment is right and is affirmed.

Mr. Justice Campbell concurs in the conclusion.