TERRE GRANDE, INC., an Indiana corporation, Plaintiff,

v.

FOUR CORNERS OIL & MINERALS CO., formerly known as Four Corners Uranium Corp., a Colorado corporation, Defendant.

Civ. A. No. 66–C–92.

United States District Court
D. Colorado.

Jan. 10, 1967.

Fred M. Winner, and Michael T. Vaggalis, Denver, Colo., for plaintiff.

Leland E. Modesitt, Richard H. Shaw and Peter L. Garrett, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, Judge.

This cause was tried to the Court. The facts are not seriously disputed and formal findings are, therefore, unnecessary. It turns on the construction of the agreement in question together with the facts surrounding its performance and its termination. The suit is a diversity one, although this matter is questioned. Plaintiff is an Indiana corporation, allegedly having its principal place of business in Indiana; on the other hand, defendant is a Colorado corporation, having its place of business within this district.

Essentially, the relief which the plaintiff seeks is recognition of its equity in an agreement to sell certain lands situated in Jefferson County, Colorado, southwest of Denver. Plaintiff defaulted in its payments. Defendant exercised the right granted by the contract to terminate. Plaintiff now claims that the agreement is a security type of instrument which can not be forfeited and which requires that a foreclosure suit be instituted.

The agreement in question was entered into April 3, 1961. It was between the defendant, Four Corners Oil & Mineral Company and one Kel Christensen, whereby Four Corners agreed to sell Christensen some 958 acres of unimproved real property for a total purchase price of $1,437,000.00. The basis for arriving at this figure was an average valuation of $1500.00 per acre. The total purchase price was subject to adjustment in accordance with a contemplated survey. A schedule of payments was provided starting August 4, 1961, and continuing to September 1, 1966, with interest on the unpaid balance at the rate of five per centum per annum from September 1, 1962. These interest payments were due on September first of each year through September 1, 1966. Under the contract Christensen was not entitled to a conveyance until all payments for the year 1961 had been made. He was then entitled to a conveyance to the extent of eighty per cent. of the principal paid in; the remaining twenty per cent. was to be retained by defendant as a withholding against default in payment until such time as the principal and interest were paid in full. After all payments were made for 1961, the defendant was to convey lands upon receipt of subsequent payments according to the payment schedule, subject to the same twenty per cent. withholding. When the principal and interest were paid in full, conveyance of the remaining unconveyed property was to be made.

On or before ten days prior to making a principal payment, Christensen was required to notify the defendant of the proposed date and amount of payment, and the description of the tract he desired to have conveyed. Until conveyances were made, title to all lands was to remain in the defendant, who agreed to pay all general taxes and special assessments thereon. The defendant was to continue in possession of the unconveyed lands, have the right to grow and harvest crops, and the right to all rents, issues and profits from such lands. Christensen was required to obtain the written approval of the defendant prior to any zoning or rezoning or making changes or alterations in the maps and plats with respect to unconveyed property. Similar approval was required by the contract with respect to the location

of all sewer, water and gas trunk lines, mains and laterals.

The agreement contained strict forfeiture provisions. It provided for time to be of the essence and in the event of default, for termination after a thirty-day notice during which thirty days the purchaser could correct the default. Following default, the agreement provided for payments which had been made to be retained by the sellers as liquidated damages including the heretofore-mentioned twenty per cent. Other provisions allowed the purchaser to retain any land which had been conveyed. The purchaser was required to execute a quit claim deed (as to land which had not been conveyed to him) to the seller following termination and on demand of the seller.[1]

Christensen ultimately assigned his contract to the plaintiff, Terre Grande, Inc., but before doing so he had partially performed it. From April 1, 1961 to May 15, 1962, Four Corners conveyed to Christensen a total of 120 acres for $126,206.00.

The assignment from Christensen to Terre Grande occurred on May 15, 1962, and in connection with this assignment a warranty deed for the 120 acres which had been conveyed was executed from Christensen to Terre Grande, subject to a deed of trust payable to one Vernon Hill. The consideration for this assign-

1. The relevant forfeiture provisions which have been generally described, are as follows:

"20–A  The parties hereto agree that time shall be of the essence of this agreemen. In the event of any default in the performance or observance of any of the terms, conditions, covenants or agreements by Purchaser to be performed by him hereunder, Seller may give Purchaser thirty (30) days written notice of default specifying the default of Purchaser, and if such default is not corrected or remedied by Purchaser within the thirty (30) days specified in such written notice, Seller may by written notice to Purchaser terminate this agreement, in which event Seller shall retain all sums theretofore paid by Purchaser to Seller as liquidated damages, and upon such termination the parties hereto shall be released from all further obligations hereunder except as hereinafter provided.

"B.  The parties hereto in agreeing that all payments made hereunder by Purchaser to Seller shall be retained by Seller as liquidated damages in the event of termination as provided above, expressly agree that the 20% of all principal payments to be retained by Seller for which land is not conveyed hereunder as provided herein, shall also be retained by Seller and shall be considered as liquidated damages hereunder. The parties further agree that under no circumstances shall the provisions herein made for the retention of such payments by Seller in the event of termination of this agreement as herein provided be considered as a penalty or forfeiture. Purchaser hereby expressly waives and releases to the Seller any right in law or equity which purchaser might have to cause the liquidated damages provision of this agreement to be construed as a penalty or forfeiture or to challenge the Seller's right to the retention of said payments as liquidated damages in the event of the termination of this agreement as herein provided.

"C.  In the event of such termination by Seller as provided herein, such termination shall in no way affect any conveyance of land made by Seller to Purchaser hereunder prior to such termination nor shall such termination affect the Purchaser's right to have land conveyed to him, the selection of which he may have deferred at the time of payment therefore pursuant to the right of deferral of selection of land granted to Purchaser in paragraph 6–D herein.

*     *     *     *     *

"D.  Upon receipt of written notice of termination by Purchaser from Seller as provided above, Purchaser shall upon demand of seller

"1.  Execute and deliver to Seller a quit claim deed quit claiming all right, title and interest of Purchaser in and to all of the property not previously conveyed by Seller to Purchaser hereunder and except any of the property to which Purchaser may be entitled to conveyance by reason of having deferred selection of such property at the time of making payment therefor as provided in paragraph 6–D herein.

"2.  Deliver to Seller copies of all engineering surveys, subdivision plans, maps, plats, reports and other documents which in any way relate to or are connected with the property which has not been conveyed to Purchaser by Seller hereunder."

ment and conveyance to plaintiff was $443,370.00. This included a cash payment of $116,050.00, the assumption of the Hill trust deed of $85,000.00, and the execution of two promissory notes in the total amount of $242,320.00.

The promissory notes to Christensen were secured by a trust deed upon the 120 acres plus an agreement by Terre Grande to give deeds of trust to Christensen on ten per cent. of the lands subsequently conveyed to Terre Grande by Four Corners. Plaintiff also gave Christensen a separate instrument entitled "Acceptance of Assignment, Designation of Agent and Conditional Reassignment," under which document Terre Grande assumed all of Christensen's obligations under the agreement and conditionally reassigned the contract in the event of default by plaintiff in its performance of covenants or payments to Christensen.[2]

On May 31, 1962, Four Corners executed its written consent to the assignment from Christensen to plaintiff and in this document it also consented to the conditional reassignment from plaintiff to Christensen.

Thereafter, Terre Grande made payments to Four Corners and in turn received conveyances. Thus, payments were made from June, 1962 to August, 1963. The total land conveyed was 40 acres; the total payments from Terre Grande to Four Corners amounted to approximately $156,500.00. Terre Grande also paid $111,950.00 to Christensen under their assignment agreement; transferred land valued at $48,000.00 to local government authorities for highway purposes; and expended $6,000.00 for preliminary development plans.

On August 19, 1963, plaintiff requested an extension of time to make the September 1, 1963, payment. Four Corners granted an extension to October 10, 1963. However, the payment was not made on this latter date and so, on Oc-

2. The pertinent provisions of this "Acceptance of Assignment, Designation of Agent and Conditional Reassignment" are as follows:

"THAT Terre Grande, Inc., for a good and valuable consideration, in hand paid by Kel Christensen, the sufficiency of which Terre Grande, Inc., conclusively admits is adequate, hereby conditionally reassigns, sells and transfers and sets over all of its interest in and to said Four Corners Oil & Mineral Co. —Kel Christensen land contract dated April 3, 1961, unto the said KEL CHRISTENSEN with full authority and right in the said Kel Christensen to become effective only in case of default in the payment of a certain indebtedness due to Kel Christensen by Terre Grande, Inc., or, the default by Terre Grande, Inc., in the performance of certain covenants agreed to be performed by Terre Grande, Inc., for the benefit of Kel Christensen, all as set forth in the agreement executed by and between Terre Grande, Inc., and Kel Christensen bearing date of April 20, A.D. 1962, which default is to be evidenced to Four Corners Oil & Minerals Co. by an affidavit of the said Kel Christensen duly executed and acknowledged, setting forth the nature of the default, and further reflecting that a copy of said affidavit is being served upon Terre Grande, Inc. Upon the presentation of such an affidavit of default by the said Kel Christensen to Four Corners Oil & Minerals Co., the said Conditional Reassignment, sale and transfer herein made shall become effective, final, binding and conclusive upon Terre Grande, Inc., and from that day hence, Terre Grande, Inc., shall have no further right, title and interest in and to the said contract * * * and further, this instrument, in the event of the above happenings is a specific and direct authorization to Four Corners Oil & Minerals Co. to thereafter deal with the said Kel Christensen in regard to said contract of April 3, 1961, as though the assignment of said contract to Terre Grande, Inc., had never existed, and without any further obligation to Terre Grande, Inc.

"FURTHER, Terre Grande, Inc., hereby releases Four Corners Oil & Minerals Co. from any claim or cause of action of any nature by reason of its acting and reliance upon the authority of an affidavit of default of the said Kel Christensen duly executed and acknowledged and presented to the said Four Corners Oil & Minerals Co. in accordance with the terms hereof."

tober 14, 1963, Four Corners served a written notice of default in accordance with the terms of the contract. Plaintiff failed to correct the default within the thirty days allowed by the contract and so, on November 14, 1963, Four Corners served a written notice of termination. It is to be noted that defendant was under contractual commitments to others under purchase contracts and deeds of trust covering portions of the subject property and was in part relying upon Terre Grande's payments to meet its obligations. Following the giving of this notice of termination Terre Grande and Four Corners sought to settle their differences and sought to reach an agreement pursuant to the contract requiring them to share conveyances made to governmental agencies for highways and other public purposes. No agreement was reached. After that, Four Corners reached a settlement with Christensen under the terms of the "Acceptance of Assignment, Designation of Agent and Conditional Reassignment" when the reassignment provisions became operative by reason of Terre Grande's default on its payments to Christensen. Christensen released Four Corners and in turn received a conveyance for 20 additional acres. Four Corners conveyed the remaining acreage of the original 958 acres to Metz Industries, Inc., a Delaware corporation with principal offices in Omaha, Nebraska. The evidence shows that Four Corners and Metz are closely related as they have interlocking directors and officers.

It is the position of Terre Grande that under the applicable Colorado law the termination was ineffectual. It maintains that the contract must be treated as a mortgage and foreclosed as such. Plaintiff maintains that the defendant's termination has deprived it of its equity of redemption and it seeks to invoke the equitable powers of this Court requesting a period within which it can redeem. In the alternative, it demands damages in the amount of $600,000.00. The defendant's position, on the other hand, is that the agreement has none of the characteristics of a security instrument;

that both in form and substance it is a contract to sell land and that it had a clear right under the terms of the contract to terminate; that it did so strictly in accordance with the provisions of the contract. Four Corners also argues that this Court lacks jurisdiction to grant relief because there is no diversity of citizenship.

■ Although we have heretofore ruled against Four Corners on the jurisdictional question, some additional comment is in order in the light of the facts developed at the trial. Terre Grande is unquestionably an Indiana corporation which, although technically in good standing, is inactive in the State of Indiana. The question is whether its principal place of business is in Colorado by reason of the land contract that is before the Court. On the date of the filing of this action, that is, February 11, 1966, all plaintiff's directors, officers and shareholders resided in Indiana. Its offices and bank account were in that state. It did not, however, engage in any business in Indiana. It had no real or personal property or full time employees who resided there. We recognize, of course, that if Terre Grande's principal place of business is Colorado, there would be no diversity jurisdiction. This is a factual question, to be determined by reference to the total activity of the corporation. See Title 28 U.S.C. § 1332(c), and see Bullock v. Wiebe Construction Co., S.C.Iowa, 1965, 241 F. Supp. 961.

■ If Terre Grande were conducting extensive business operations in Colorado we would hold that Colorado is its principal place of business. It can hardly be said, however, that the filing of a lawsuit seeking to obtain a decree requiring a contract to be foreclosed as a mortgage, constitutes the doing of business. To be sure, Terre Grande owns 160 acres in Colorado, but there is no indication that there is any corporate activity in connection with this acreage. We must conclude, therefore, that the activities in Colorado are not sufficient to require us to disregard the incorpo-

ration in Indiana, the presence of the corporate office, such as it is, in Indiana, and the presence of Terre Grande's shareholders and officers within that state. For this reason, we conclude that diversity of citizenship existed as of the time of the filing of this action.

We now turn to the question whether the agreement and the facts and circumstances are such as to require the Court to treat the agreement in question as a mortgage and whether the circumstances are such as to demand that an equity of Terre Grande be recognized by extending to it an opportunity to redeem this land by making payment within a specified time.

There are numerous Colorado decisions which take the position that a vendor-vendee agreement must be foreclosed as a mortgage. See, for example, Pope v. Parker, 84 Colo. 535, 271 P. 1118 (1928); Fairview Mining Corp. v. American Mines & Smelting Co., 86 Colo. 77, 278 P. 800 (1929); Rocky Mountain Gold Mines v. Gold, Silver & Tungsten, 104 Colo. 478, 93 P.2d 973 (1939). There are also many cases which have refused to treat such an agreement as a mortgage. Schiffner v. Chicago Title & Trust Co., 79 Colo. 249, 244 P. 1012 (1926); American Mortgage Co. v. Logan, 90 Colo. 157, 7 P.2d 953 (1932); Miller v. Temple, 120 Colo. 546, 211 P.2d 989 (1949); Self v. Watt, 128 Colo. 61, 259 P.2d 1074 (1953). There are many additional decisions, most of which are collected and discussed in Sobol, Relief Upon Default Under a Contract for Purchase and Sale of Land, 29 Dicta 7 (1952).

The basic premise of the cases which grant relief is that equity abhors a forfeiture. In each of these instances the attempted forfeiture had an arbitrary aspect and the balance of the equities favored the vendee. Although the decisions are not entirely reconcilable they, generally speaking, turn on the particular facts and a balancing of the equities.

In *Pope*, supra, the contract had some mortgage character. There the vendee had been given possession. The agree-

ment provided that in the event of any default in the payment of any installment, the vendor could reenter the land and sell the property at public sale in order to recover the unpaid balance. There was a further provision for the vendor to account to the vendee for surplus. There was neither a time of the essence clause nor a forfeiture clause. The Colorado Supreme Court held that this contract was in effect a mortgage, saying:

"There was a clause in each contract which provided that, if Pelz defaulted, Pope should 'have the right to enter upon the above-described premises and sell the same at public sale' to pay the purchase price, accounting to Pelz for any surplus.

"It is clear enough that this contract (either of them; they are essentially one as held by the district court) was a mortgage which secured to Pope the performance of Pelz's obligations to him. The fact that Pope retained the title to the property as security was the same in effect as if Pelz had conveyed it to him for that purpose. Reitze v. Humphreys, 53 Colo. [177] 178, 184, 125 P. 518; Andrews & Co. v. Colo. Sav. Bank, 20 Colo. 313, 36 P. 902, 46 Am.St.Rep. 291; Clark v. Bright, 30 Colo. [199] 201, 69 P. 506; Clay, Robinson & Co. v. Moeller, 74 Colo. [10] 15, 218 P. 903; Wells v. Francis, 7 Colo. 396, 415, 4 P. 49; Teal v. Walker, 111 U.S. 242, 251, 4 S.Ct. 420, 28 L.Ed. 415; 41 C.J. 299; Hutchinson v. Crane, 100 Ill. 269; Longworth v. Taylor, 1 McLean, 395, 15 Fed.Cas. No. 8,490, affirmed in 14 Pet. 172, 177, 10 L.Ed. 405."

In *Fairview* the basic agreement was a lease and option to buy mining property. The lessee-vendee exercised the option but then failed to meet the payment schedule notwithstanding that several extensions were granted totaling some three years. Defendant had paid approximately $86,000.00 of the $150,000.00 purchase price and had expended an additional $100,000.00 in improving and developing the mine. The Supreme Court emphasized that the lease and op-

tion contained no time of the essence clause and also emphasized in holding that the contract was in effect a mortgage, that there were strong equities favoring the vendee. These grew out of the substantial amount paid together with the improvements which had been made and the circumstances surrounding the termination. The vendor had exercised it on the day appointed for the making of the payment notwithstanding that there was indication that the payment could be and would be made.

The decision which goes to the greatest length in requiring foreclosure is *Rocky Mountain Gold Mines*, supra. In that case the lessor of mining property (in which there was an option to purchase) filed an action in ejectment. The lease provided that if the option was exercised prior to the expiration of the lease all rental would be applied toward the purchase price of $85,000.00. However, in the event of failure of the lessee to comply with the terms of the lease it was subject to forfeiture upon thirty days' notice, during which the lessee could remedy the default. The lessee failed to pay one-half of one month's payment and thereupon the lessor sent notice of termination. Here defendant had paid about sixty-two per cent. of the purchase price and was expending large sums of money in making permanent improvements on the property. The payments totaled $220,000.00 and at the same time there had been received only $20,000.00 from the mine as income. Furthermore, a special problem arose from the illness and death of a shareholder of the lessee who had been furnishing the funds for making the payments. The Supreme Court followed the *Fairview* and *Pope* cases and held that the vendee was entitled to a period of six months within which to pay the money. The reasoning was that this was essentially a sale of the mine and that the plaintiff's only right was to collect the purchase price. Unlike *Pope* and *Fairview* there was a

forfeiture clause in the lease and thus it is clear that the presence of a forfeiture or termination clause is not controlling.

The decision which is relied on most strongly by Four Corners is American Mortgage Co. v. Logan, supra. This was a contract to sell land in which the vendor remained in possession. The contract provided that time was of the essence and also contained a forfeiture clause which was to be operative in the event of default in payment. At the time of default the defendant had paid about twenty-eight per cent. of the purchase price and had been given time extensions totaling sixteen and one-half. months from the original due date. The Court refused the effort of the vendee to have the transaction construed as a mortgage, distinguishing *Pope* and *Fairview*. It emphasized that in those cases there was not a forfeiture clause nor a clause making time of the essence and that the terms of the contract were such as to be susceptible to their being construed as mortgages. On this it was said:

"\* \* \* That such contract was, in effect, a mortgage is clear. We held that, under our Code of Civil Procedure, the provision for entry and sale was void; that foreclosure could be had only in the manner provided in chapter 21 (§§ 272–274) of that Code. The contract now before us is entirely different. That case, therefore, has no application to the present one. Mr. Justice Denison, who wrote the opinion, also wrote the opinions in Roller v. Smith, supra, and Scroggs v. Harkness Heights Land Co., supra. The contracts in those cases and in Schiffner v. Chicago Title & Trust Co., supra, and Ruth v. Smith, supra, were so obviously different from the contract in the *Pope* Case that it was considered unnecessary to refer to the former cases, even for the purpose of distinguishing them." [3] 7 P.2d at 955.

---

3. The cases cited by the court are illustrative of cases decided in favor of the vendor:

Ruth v. Smith, 29 Colo. 154, 68 P. 278 (1901), is the least helpful since the contract contained neither time-of-essence

In *Miller,* supra, an assignee of the original vendee sold the land to plaintiff at a time when the last payment provided for in the contract was four days overdue. The vendor was not required to make a conveyance until the balance of $2500.00 was paid. The plaintiff took possession without knowing that his vendor was in default and still owed $2500.00 on the property. The trial court denied the plaintiff's petition for specific performance and further held that the defendant vendor was not bound by the contract under which the plaintiff had purchased the land and that he had a right to exercise the forfeiture upon default in accordance with the original contract. This judgment was affirmed, the Court holding that the forfeiture clause was valid and enforceable and that the contract contained no element of a mortgage. The Court said:

"This contract contains no elements of a mortgage, or in the nature of a mortgage and cannot have the effect of a mortgage, as is contended by plaintiff in error. Defendant Temple clearly was within the exercise of his rights thereunder as seller in declaring a forfeiture and termination of the contract and could not be criticized for so doing in face of the evidence which clearly shows that he was ready and willing to perform his part of the contract in full at any time long after default if proper tender had been made. He cannot now be forced into taking a position for which there was no provision, or to which he had not agreed, and we believe that the case of

---

nor forfeiture clauses, and the defendant did not interpose any equitable defense or argue that foreclosure was plaintiff's proper remedy. It does indicate that where the vendee's equities are not strong, the court will not strain to treat the transaction as a mortgage. The vendee had paid about 11 per cent of the purchase price of $371.20 and had been in default about three months. Plaintiff sought to recover possession under the state unlawful detainer statute, and the court overruled defendant's demurrer to the complaint.

In Roller v. Smith, 76 Colo. 371, 231 P. 656 (1924) the contract contained both time-of-essence and forfeiture clauses. The defendant had paid about 8 and ½ per cent of the purchase price of $4,000.00 and was 2 and ⅓ months in default. The defendant plead a prior settlement with the plaintiff. The court stressed that plaintiff's action to recover possession was "to enforce not to cancel the contract," and that there was "no function for equity to perform." The decision was for the defendant vendee, however, since the notice of forfeiture did not comport with the terms of the contract.

In Scroggs v. Harkness Heights Land Co., 76 Colo. 597, 233 P. 831 (1925), defendant had paid $140.00, or about 26% of the purchase price, and was four months in default. The contract provided that time was essential and for forfeiture. The court quieted plaintiff's title. See Sobol, supra, at page 12.

In Schiffner v. Chicago Title & Trust Co., 79 Colo. 249, 244 P. 1012 (1926),

the defendant contended that the relationship between the parties was like that of mortgagor and mortgagee. The contract had the usual forfeiture and time-of-essence provisions. The court upheld the forfeiture stating that a contract can't be treated as a mortgage unless the mortgagor has real estate to pledge, and that the defendant had none. The defendant's equities were very slight; only 7 per cent of the price of one tract had been paid, and only 13 per cent of the price of the other had been paid; the default had persisted for 5 years and 4 months; the defendant failed to indicate a willingness to tender the amount due. See Sobol, supra, at pages 11–12.

The decision in Lowe v. Sory, 107 Colo. 341, 111 P.2d 1054 (1941), although the mortgage analogy wasn't evoked and a period to redeem not prayed for, further illustrates the type of situation in which forfeiture has been upheld. The plaintiff sold land to defendant retaining title to himself. Installment payments were provided for, with the provision that time was of the essence and that upon default of any payments due, the plaintiff could declare the contract forfeited, re-enter and take possession, and retain all payments theretofore made as liquidated damages. At the time of default, defendant had paid approximately 45 per cent of the purchase price. But the court concluded that a redemption period would serve no purpose since the defendant didn't indicate that it would, or even wanted, to pay.

American Mortgage Company v. Logan, 90 Colo. 157, 7 P.2d 953 is definitely in point and controlling herein."

However, the Court modified the judgment to permit the plaintiff to pay up and retain the land because the defendant had expressed a willingness to accept payment in lieu of possession. The Supreme Court emphasized, however, that it was not deviating from the position which it had taken in American Mortgage Co. v. Logan.

Self v. Watt, supra, was a proceeding for strict foreclosure of a contract for the sale of land for the purchaser's default in making payments. The contract contained a forfeiture clause under which all payments made prior to the default were to be retained by plaintiff "in full satisfaction and liquidation of all damages." At the time of the suit defendant Self had paid over 50 per cent. of the contract price and had been in default for approximately four months. Defendant appealed from the trial court's judgment ordering the balance to be paid within thirty days or, upon failure to do so, declaring the contract null and void and awarding possession to the plaintiff. Defendant asserted that the court should have provided for a "reasonable redemption period of about six months." The Colorado Supreme Court affirmed, citing American Mortgage Company v. Logan, supra, and Miller v. Temple, supra, as controlling. The court failed to find either a legal or equitable basis for extending the redemption period.

"Under contracts such as the one we are considering, the trial court when fixing a time for payment is not bound by the statutes concerning redemption from mortgage foreclosure. Equity will take into consideration all the attendant facts and circumstances in fixing the time. We conclude that such a period is not the six months provided by the statute regarding redemption under mortgage foreclosure. In the instant case the trial court did not abuse its discretion in fixing the time which was, under the facts of the case, both reasonable and equitable. Miller v. Temple, supra, is ample authority for the judgment and decree of the trial court.

\* \* \* \* \* \*

"At no time during the pendency of this action did the defendant make any showing of a meritorious defense to the instant suit. Neither did he at any time make any tender of the amount due. An attempt is made by counsel for Self to claim that Watt enjoyed a windfall as a result of his action. When Self contracted to buy the land in May, 1949 a crop was growing thereon and Self by the contract reserved to himself 60% of this crop, which latter amount was something over $12,000.00 as against the $10,500.00 he paid to Watt when the contract was executed. The other 40% of the crop was applied on the purchase price of the land, as above recited. In addition to this Self had possession of the land from May, 1949 to March, 1952, a period of nearly three years, during which time he enjoyed the use thereof and had and was entitled to the value of crops grown thereon. We cannot say that there was any windfall enjoyed by Watt. This matter was urged before the trial court, and if it was a proper issue in that court it was there resolved against Self. We must do likewise." 128 Colo. 63, 259 P.2d 1076-77.

Storke and Sears, Colorado Security Law, sections 48 and 49, pages 161 through 164, and *Sobol*, supra, summarize this body of law on the basis that there are four governing factors to be considered: The *first* of these is possession of the land; *second*, the percentage of the purchase price paid; *third*, the length of the vendee's default, and *fourth*, the vendee's willingness to pay the balance. The presence of a forfeiture clause and of a time of the essence clause are certainly other factors which have influenced the outcome of some of the cases.

We are not unconcerned about plaintiff's plight, and at the same time

we are at a loss as to how a remedy or an award can be designed under the circumstances disclosed by the evidence. The demand for money damages is untenable because plaintiff has violated the contract. One in this position is not entitled to be rewarded. Furthermore, in order to restore the amount which plaintiff has paid in it would be necessary to conclude that something in the nature of a rescission is in order. This is neither made out by the evidence nor even prayed for.

The remaining possibility is a holding that this installment contract has the aspects of a mortgage and requires foreclosure. The difficulty in this course is that neither the contract nor the circumstances surrounding its performance call for this kind of treatment. The agreement has none of the attributes of a security instrument, except the twenty per cent. retention provision. The parties contemplated that conveyances were to be made as payments were completed and that the twenty per cent. would be held back to ensure continued performance. In the event of plaintiff's failure to perform, the property withheld became liquidated damages. The equities recognized by the Colorado cases do not favor Terre Grande. It is not a situation in which a large proportion of the purchase price has been paid and the vendee is threatened with complete loss. Nor is it a case in which substantial improvements have been made. Moreover, it is not a fact situation in which the default is relatively inconsequential, and in which no change of position has occurred. The single factor which favors plaintiff is a fairly substantial unrealized payment. We do not, however, consider this a sufficient basis for rewriting this contract upon the basis of the filing of a lawsuit some two and one-half years after the default. None of the decided cases even suggest that such a course of action should be followed.

In concluding that plaintiff has not made out a case we are mindful of the fact that this was a speculation from start to finish. We also have in mind the fact that plaintiff waited for a long period of time and then filed an action which has to be regarded more as a litigation adventure than as an appeal to a court of equity.

For the foregoing reasons we conclude, not without some reluctance, that plaintiff does not have a case and that it must be denied relief. It is, therefore,

Ordered that judgment be entered in favor of the defendant and against the plaintiff. It is

Ordered that the complaint be dismissed and that defendant have judgment for costs. Counsel for defendant are directed to prepare a formal judgment and to submit it to the Court for signature. The entry of judgment will await the signing of the submitted judgment.